# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

---

**EASTERN DISTRICT.**

## NEW-ORLEANS, MARCH, 1835.

---

**ALLIANCE MARINE ASSURANCE COMPANY vs. LOUISIANA STATE INSURANCE COMPANY.**

*APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.*

Where property shipped from New-Orleans to Liverpool is insured by the owners in London, about the time of the shipment, and is soon after re-landed and stored, and insured by the factors in New-Orleans against fire, "for all whom it may concern," is destroyed by fire, and the London office pays on the first policy : *Held,* that the latter cannot claim indemnity of the New-Orleans office, unless it be a re-insurance, because the claimants have no insurable interest in the property destroyed. Their interest only extended to the risks insured against.

The contract of assurance, although aleatory in its nature, is nevertheless synallagmatic and consensual in its inception and form, as containing the evidence of reciprocal obligations.

To render a contract of insurance valid, the mutual consent of the parties is necessary. To support it requires proof of *interest* in the person acting and claiming, or those for whom he claims, or their sanction and ratification of his acts, and proof of the loss of the thing insured.

EASTERN DIST.
*March,* 1835.

ALLIANCE
MARINE ASSU-
RANCE CO.
vs.
LA. STATE INSU-
RANCE CO.

1

EASTERN DIST.
*March*, 1835.

ALLIANCE
MARINE ASSU-
RANCE CO.
*vs.*
LA. STATE INSU-
RANCE CO.

Factors have the power to insure for the principal owner, without special authority given : but where factors insure property consigned to them, "*for account of whom it may concern*," and which has been already insured by the owners in another country, the first insurers cannot claim indemnity from the last, when there was no special authority given, or subsequent ratification of the insurance by the first insurers, before the loss happened.

Underwriters claiming the benefit of re-insurance, must show a special authority given to an agent for that purpose, an *express* contract to that effect, or an express sanction of the acts of an agent effecting a subsequent insurance on the same risk, before loss.

The chairman and directors of the "Alliance Marine Assurance Company" of London, instituted suit against the "Louisiana State Insurance Company" in New-Orleans, for the recovery of an indemnity of two thousand pounds sterling, or eight thousand eight hundred and eighty-eight dollars eighty-eight cents, on a claim of re-insurance.

The plaintiffs allege, that at London, on the 25th of June, 1830, they insured Joseph Smith & Son on three hundred and twenty-three bales of cotton, shipped on board the ship Aurora, at and from New-Orleans to Liverpool, against the usual risks and perils of the sea, the insurance amounting to two thousand pounds sterling ; that the ship sailed from New-Orleans the 3d of July, 1830, with the cotton on board, but was stranded at the Balize, returned to the city to repair, and stored the cotton in a ware-house or cotton-press. The consignees and agents of the ship and cargo, acting for the benefit of all concerned, or whom it might concern, made insurance at the office of the Louisiana State Insurance Company, on the 16th of July, 1830, on one thousand one hundred and twenty-seven bales of cotton, including the three hundred and twenty-three bales of Smith & Son, against fire, for the sum of forty-one thousand dollars ; that said cotton was insured as stored in the cotton-press of James Freret, in New-Orleans, and while the risk continued was wholly consumed and destroyed by fire, on the 1st of August, 1830.

EASTERN DIST.
*March*, 1835.

ALLIANCE
MARINE ASSU-
RANCE CO.
*vs.*
LA. STATE INSU-
RANCE CO.

They further allege, they have paid two thousand pounds sterling on their own policy of insurance, to Joseph Smith & Son, and that by reason of said payment, and under the policy taken out of the Louisiana State Insurance Company, they are entitled to be indemnified, and claim the said sum of two thousand pounds, equal to eight thousand eight hundred and eighty-eight dollars, eighty-eight cents, on the re-insurance.

They further allege, that the Louisiana State Insurance Company has paid to others under the same policy, the amount of their loss, and to Smith & Son, the balance of the value of their cotton, not covered by the policy in London, but refuse to indemnify and pay them, (the plaintiffs) on the ground that they have no right to claim indemnity under the same policy, or any other.

The defendants pleaded the general issue; and in their answer except to the plaintiffs' right to maintain their action; that they have not complied with the conditions of their policy of insurance, and particularly the eighth article, which relates to notice and proof of loss. They admit the execution of the policy sued on, but deny they are in any manner liable under it.

Upon these pleadings the parties went to trial on the merits.

The evidence shows that the ship Aurora was consigned to the house of Tayleur, Grimshaw & Sloane, in New-Orleans. Her cargo consisted chiefly of one thousand one hundred and twenty-seven bales of cotton, among which was three hundred and twenty-three bales shipped by the consignees to Joseph Smith & Son, in Liverpool. The ship sailed from New-Orleans, the 2d July, 1830, and was stranded at the Balize, returned to the city, re-landed her cargo, and the one thousand one hundred and twenty-seven bales of cotton were stored in the cotton-press of James Freret. On the 16th July, 1830, Tayleur, Grimshaw & Sloane, the consignees of the vessel and cargo, caused insurance against fire to be made in the office of the Louisiana State Insurance Company, on the cotton thus

EASTERN DIST.
March, 1835.

ALLIANCE
MARINE ASSU-
RANCE CO.
vs.
LA. STATE INSU-
RANCE CO.
stored, *for one month.* The policy expressed that the insurance was made "on one thousand one hundred and twenty-seven bales of cotton, being part of the cargo of the ship Aurora, stranded at the Balize, *and for account of whom it may concern.*" The policy also contained a clause which says, " in case the buildings or goods herein mentioned, *have been already, or shall be hereafter insured by any policy issued from this office, or by an agent for this office, or by any other Insurance Company, or by any private insurers, such other insurance must be made known to this office, and mentioned in or endorsed on this policy, otherwise this policy to be void.*"

On the 1st of August, 1830, the cotton-press with the cotton stored in it, was consumed and destroyed by fire. The three hundred and twenty three bales, shipped to Joseph Smith &. Son, in Liverpool, was covered in part by a marine policy, taken out of the office of the plaintiffs in London, by the owners, on the 25th of June, 1830, "upon certain cotton, the property of Smith & Son, at and from New-Orleans to Liverpool, to sail on or before the 1st of August, 1830." On preliminary proof of the loss of the cotton in New-Orleans by fire being made, the plaintiffs paid the loss, amounting to two thousand pounds sterling. They now seek to recover this amount from the defendants.

*James Grimshaw,* (of the house of Tayleur, Grimshaw & Sloane,) witness for plaintiffs, sworn says, "that he effected the insurance on the cotton mentioned, in the office of the Louisiana State Insurance Company; that the three hundred and twenty-three bales of cotton specified in the bill of lading, annexed to the policy of insurance, belonged to Joseph Smith & Son, were shipped by witness's house on board the ship Aurora, and after she was stranded at the Balize, were brought to the city and stored in the cotton-press of James Freret, jr., and destroyed by fire on the·1st of August, 1830. The house of Tayleur, Grimshaw & Sloane acted as the agents of all parties interested in the cargo."

This witness also proved that he made the requisite preliminary proof of the loss of the cotton, and the insurance on it, by the defendants. In an affidavit which he made for

this purpose, on the 16th March, 1831, he makes the
following statement: "That the insurance effected by him
of the whole cargo of cotton, was made without reference to
any particular ownership, and expressly to secure the property
against such risk, until it could be re-shipped on behalf of
whoever might be interested in it, *owners or underwriters,*
*whether any part or all was covered by marine policies in
England.*"

"That Joseph Smith & Son were covered by a marine
policy to the amount of two thousand pounds sterling, which
this deponent claims of the Louisiana State Insurance
Company, on behalf of the underwriters, who were insured
by this deponent against the risk of fire on the same. And
the balance of the value or cost of said cotton, to wit: two
thousand six hundred and ninety-one dollars eighty-four
cents, deponent claims as the agent of Joseph Smith & Son."

It further appeared that the Louisiana State Insurance
Company paid the losses on this policy, which were not
covered by the policy of the London office. But in making
this payment, the insurers expressly say it is made on the
value of the property destroyed, "*less the amount insured
thereon, in Great Britain or elsewhere.*"

*Frederick Secretan,* superintendent of the Alliance Marine
Assurance Company, in London, a witness examined by
commission, on the part of the plaintiffs, in answer to cross
interrogatories, says, "that by the law of England, it is
clearly and well established that a question of *re-insurance*
can never become the subject of litigation; that a re-insu-
rance, unless occasioned by the *failure* of the previous
under-writers, is clearly illegal and void."

In answering the cross interrogatory requiring him to
state all he knew in relation to the legality and validity of a
contract like this, the witness says, "that he believes a con-
tract like the one sued on, is a lawful contract by the law of
England;" and, "that he has laid the facts of this case before
Mr. Thomas Hale, a gentleman of great experience at
Lloyd's coffee-house, as an arbitrator and adjuster of claims,

EASTERN DIST.
March, 1835.

ALLIANCE
MARINE ASSU-
RANCE CO.
vs.
LA. STATE INSU-
RANCE CO.

and who has made the following observations in writing on this question, in which this deponent entirely concurs."

'When ships put into port with such damage as to require being unloaded, it is usual to insure cargoes against fire in ware-houses; and in the adjustment of the expenses, the charge for such insurance is always placed to the cargo, consequently the first assurers on the respective goods, pays this premium, in consideration of having been relieved from such risk. It generally happens that the greater part, or perhaps the whole of the cargo is insured, and if the assurers at the intermediate port are to avail themselves of this circumstance, it of course follows, that they take a premium erroneously. I am sure a case will not be found where the premium, or any part of it, has been returned. I expect a precedent for such a plea as that set up by the Louisiana State Insurance Company cannot be found. Such assurances being considered special, do not mix up with other insurances, and I have no doubt the sentiments of every Insurance Company are, that they would not make any inquiry respecting other insurances. First assurers being in the habit of paying premiums to second assurers, give such insurances very much the appearance of re-insurances. But in the present case, the first assurers have not been paid the premium, neither have they in any respect been privy to the second insurance being made, so that the insurance effected by the Louisiana State Insurance Company is not a re-insurance; and, in my opinion, the point of law they appear so desirous of availing themselves of, completely fails them, as it ought to do.'

The policy on which the assurance in London, at the office of the plaintiffs was effected, has the following clause: "the said company bind themselves for the true performance of the premises, confessing themselves paid the consideration due unto them for the assurance by the assured, at and after the *rate of twenty-five shillings per cent.*"

On the evidence of the case, the District Judge who tried it in the first instance, came to the conclusion "that the

defendants insured for the benefit of all concerned, whether owners or marine underwriters; that the plaintiffs having paid Joseph Smith & Son, are subrogated to their rights. That this is not a case of double insurance or re-insurance, but one which stands on its own peculiar circumstances. The defendants received the premium for the risk they ran, and no good reason of law or justice excuses them from paying the loss."

EASTERN DIST.
*March,* 1835.

ALLIANCE
MARINE     ASSU-
RANCE CO.
*vs.*
LA. STATE INSU-
RANCE CO.

Judgment was rendered for the plaintiffs, from which the defendants appealed.

*Peirce & Hennen* for the plaintiffs.

1. The plaintiffs must recover in this case, because there was no fraud, and that it was a *bonâ fide* loss is admitted by the defendants, as they have paid the owners of the cotton the amount uncovered by the London office.

2. This is not a case of re-insurance, and the plaintiffs could not have been re-insured, *expressly*, as a re-insurance; for, at the time, in England, this policy had not been executed.

3. If it amounts to a re-insurance, yet the rule of law requiring the insurance to be expressly effected as such, ceases, under the circumstances of this case. To protect owners, insurers, or any person who might lose if the cotton was burnt, was the object of Tayleur, Grimshaw, & Sloane, in effecting this insurance; but they could not say who would be the parties interested, and this the defendants well knew.

4. For a case to amount to a re-insurance, it ought to be co-extensive with the original insurance. This is certainly the law as to double insurance, and prevents it from being a double insurance.

5. The court has the most exact testimony from witnesses of great experience and respectability, as to the nature of the contract entered into by the defendants; and Tayleur, Grimshaw, & Sloane were acting on a sudden emergency, for the benefit of they *knew not whom.* The reasons why this case is not classed under the branches of either a re-insurance

EASTERN DIST.
March, 1835.

ALLIANCE
MARINE ASSU-
RANCE CO.
vs.
LA. STATE INSU-
RANCE CO.

or a double insurance are given, and the legality and frequency of cases similar to the present, and their astonishment at the objections of the defendants, are expressly stated; not in terms flattering to the defendants, it is true, yet with such seriousness as shows the opinion to have been well considered before uttered.

6. In conclusion of this argument, the court is respectfully referred to the authorities for a definition of *re-insurance* and of the *assured*.   *Philips on Insurance*, 56, 57, 60.

7. Lord Mansfield could never have here intended that two insurances on the same ship, *not for the same entire risk*, was a *double insurance;* and if not, the case before the court cannot be deemed one of that description.    1 *Johnson's Reports*, 289.

*Eustis* for the defendants.

1. There has been no compliance with the conditions of the policy, as to the proof of loss; these are *conditions precedent.*  3 *Martin, N. S.*, 223.  *Marshall on Insurance*, 811.

2. In fire assurances the contract is one of mere indemnity, and there must be a real interest in the insured at the time of the loss.  *Hughes on Insurance*, 506.  *Marshall*, 784, 787, 803.

3. If the present contract be a double insurance, it is void by the terms of the policy.

4. But the contract as declared on, is a *case of re-assurance;* that is, one by which the insurers alleged themselves to have been insured.   Has such a contract been made by the defendants?

5. The present contract must be governed by the law of insurance, as it is settled in the United States.   5 *Martin, N. S.*, 543.  4 *Louisiana Reports*, 291.  5 *Cranch Reports* 331.

6. By the Law Merchant of the United States, a contract of re-assurance *must be express;* it is not construed by the general description of the assured, "*on account of whom it may concern.*"  *Phillips on Insurance*, 74.  *Hughes*, 46.  2 *Massachusetts Reports*, 186.   3 *Caine's Reports*, 190.   3 *Vincent, Legislation Commerciale*, 566.

7. The plaintiffs cannot claim to be insured in this case, because they were without an insurable *interest* in the property. It is not the case of a double insurance. And to be a re-insurance it must be expressly made as such. *Pothier on Assurance*, 96, *Notes to* 34. 3 *Pardessus*, 240, *No.* 764–5. *Curia Phil.* 516, *No.* 5. 2 *Valin*, 65. 2 *Massachusetts Reports*, 776. 3 *Kent's Com.* 226.

EASTERN DIST.
*March*, 1835.

ALLIANCE
MARINE ASSU-
RANCE CO.
*vs.*
LA. STATE INSU-
RANCE CO.

*Mathews, J.* delivered the opinion of the Court.

This suit is brought to recover from the defendants, eight thousand eight hundred, and eighty-eight dollars, eighty-eight cents, which the plaintiffs allege to be owing to them on account of having paid that amount to certain persons styled Joseph Smith & Son, in consequence of a marine policy of assurance, by them subscribed, in favor of said Smith & Son, on the 24th day of August, 1830, in the city of London, &c. They obtained judgment in the court below, from which the defendants appealed.

The facts of the case are the following: Insurance was effected by Smith & Son, on merchandise to be shipped from New-Orleans to Liverpool, (to be laden on the ship Aurora, which was to sail from the former port, on or before the 1st of August, 1830) to the amount of two thousand pounds sterling. Cotton belonging to the assured, was put on board of this vessel, by their factors and agents, Tayleur, Grimshaw & Sloane, to the value of eleven thousand dollars, and upwards. The ship left the port *a quo* on the 3d of July, but met with an accident before she reached the Gulf of Mexico, which caused so serious an injury as to compel her to return and unload, for the purpose of being repaired. Her cargo, which consisted of cotton, was taken out, by order of the shippers, and placed in stores or ware-houses; that belonging to Smith & Son, together with a larger quantity, was put into the ware-house or cotton-press of James Freret, jr., where it was insured against fire, by a policy obtained from the defendants at the instance of the consignees of the ship, on the 14th of July, 1830, to continue in force until the 16th of August following. During this

EASTERN DIST.
*March*, 1835.

ALLIANCE
MARINE ASSU-
RANCE CO.
*vs.*
LA. STATE INSU-
RANCE CO.

period, viz: on the 1st of August, the cotton of Smith & Son, thus insured, was destroyed by fire, and a claim for indemnity in behalf of the insured was made on the insurers; payment was, however, delayed until the latter discovered that, against the greatest portion of the loss suffered by the owners of the cotton, they were secured by a marine policy obtained from the plaintiffs, having effect from the 25th of June, 1830; in pursuance of which, they paid the sum of two thousand pounds sterling, equal to eight thousand eight hundred and eighty-eight dollars eighty-eight cents, to the assured, and now claim this amount from the defendants.

The record contains bills of exceptions to the manner in which commissions to take the testimony of witnesses in England were executed; also objections to the preliminary proof offered by the plaintiffs, necessary to entitle them to support their action, &c. But, in consequence of our conclusions drawn from the entire facts of the case, we deem it unnecessary to examine these matters.

In the argument of this cause, there was much disputation as to the character of the contract sued on; whether it is a re-insurance or a double insurance, or whether it is neither, and only simply aleatory; not subjected to the rules which govern in either of the former.

We consider it important to settle these questions, as the rights of the parties must be influenced by the nature of the contract under which the plaintiffs claim. It cannot be considered as sole and simple, for two policies existed, subscribed by distinct insurers, and both, according to their terms, covering risks on the property insured, at the time of its destruction and loss; that made by the plaintiffs, having effect from the 25th of June, 1830; and the one executed by the defendants, from the 14th of July, of the same year. The latter can, therefore, be viewed in no other light than as a double insurance, or re-insurance, according to the interest which the plaintiffs had in the things insured, at the time when the defendants assumed the risk for the former. It is not pretended that they were owners, either absolute or *sub modo;* consequently, as such, they had no insurable

*Where pro-
perty shipped
from New-Or-
leans to Liver-
pool is insured
by the owners in
London, about
the time of the
shipment, and is
soon after re-
landed and sto-
red, and insured
by the factors in
New-Orleans a-
gainst fire, "for
all whom it may
concern," is de-
stroyed by fire,
and the London
office pays on the
first policy: Held,
that the latter
cannot claim in-
demnity of the
New-Orleans of-
fice, unless it be
a re-insurance,
because the clai-
mants have no
insurable inte-
rest in the pro-
perty destroyed.
Their interest
only extended to
the risks insured
against.*

interest. They were concerned and interested only as having assumed the risks to which the property was exposed by the owners. From these premises, one of two conclusions necessarily follows; either that no insurance was effected for them, or that the policy subscribed by the Louisiana State Insurance Company, was a re-insurance, intended to shift the risk from the Alliance Assurance Company, and place it on the last insurers, to the amount of property covered by the policy of the first; for they had no interest or concern in its safety, except as insurers. According to the first of these *hypotheses*, the plaintiffs are without a semblance of claim against the defendants. We have, therefore, only to inquire into the truth of the second, viz: whether a contract of re-assurance was validly made.

A contract of assurance, although aleatory in its nature, is, nevertheless, synallagmatic and consensual, as containing evidence of reciprocal obligations. To render it valid, the mutual consent of the contracting parties is necessary, given either by themselves or persons authorised by them to give such consent. In this respect it differs not materially from all other kinds of consensual contracts. The terms in which a contract of insurance is frequently made, in favor of the applicant and all other persons concerned or interested in the property insured, to support it requires proof of interest in the person acting or his authority to act for others who may be interested, previously given, or their sanction and ratification of his acts, subsequently made, and prior to the loss of the things insured. *See Baldasseroni's Treatise on Insurance, vol.* 1, *p.* 193, *et seq.* 1 *Phillips,* 58 *and* 59.

The authority of factors, consignees, and other general agents in relation to property committed to their care, and over which they exercise a qualified ownership, having power to buy, sell, or ship, on account of the real owners, to insure for the latter need not be inquired into in the present case; because, according to the principles already assumed, the plaintiffs cannot be considered as owners, in any shape. Admitting, then, the right and authority of Tayleur, Grimshaw & Sloane, to act for Smith & Son, in effecting the

EASTERN DIST.
*March*, 1835.

ALLIANCE
MARINE ASSU-
RANCE CO.
*vs.*
LA. STATE INSU-
RANCE CO.

The contract of assurance, although aleatory in its nature, is nevertheless synallagmatic and consensual in its inception and form, as containing the evidence of reciprocal obligations.

To render a contract of insurance valid, the mutual consent of the parties is necessary. To support it requires proof of *interest* in the person acting and claiming, or those for whom he claims, or their sanction and ratification of his acts, and proof of the loss of the thing insured.

The factors have the power to insure for the principal owner, without special authority given; but where factors insure property consigned to them, "*for account of whom it may concern,*" and which has been already insured by the owners in another country, the first insurers cannot claim indemnity from the last, when there was no

EASTERN DIST.
*March*, 1835.

ALLIANCE
MARINE ASSU-
RANCE CO.
*vs.*
LA. STATE INSU-
RANCE CO.

special authority given, or subsequent ratification of the insurance by the first insurers, before the loss happened.

Underwriters claiming the benefit of *re-insurance*, must show a special authority given to an agent for that purpose, an *express* contract to that effect, or an express sanction of the acts of an agent, effecting a subsequent insurance on the same risk, before loss.

insurance which they did with the defendants, as legally consequent and resulting from their power as factors and shippers, without special authorisation from the owners to this effect, it does not follow that they had any power or authority to act for the insurers in England, whom it cannot be pretended they represented, as factors or general agents. They could, therefore, proceed to obtain a re-insurance only under special authority given for that purpose. Any conclusion different from this would lead to the most absurd improbabilities. It would sanction a belief of extraordinary capriciousness on the part of the foreign assurers. That company appears to be composed of wealthy persons who formed their association for the sole purpose of taking risks in consideration of premiums; and the more they take, the better for the interests of the institution; what can be imagined more improbable than the taking an ordinary and fair risk on one day, and without any apparent cause, desiring on the next to shift it from themselves on to others, by paying a premium to the latter?

The persons, who acted in obtaining the policy from the defendants, had no authority to represent the plaintiffs, previously granted; nor was their agency subsequently sanctioned by ratifying and confirming their acts in relation thereto, before the loss of the property insured. We, therefore, consider the contract, so far as the plaintiffs claim any benefit in it directly, to be wholly null and void.

It is readily seen that our opinion in the present case differs *toto cœlo* from that of the learned gentlemen of Lloyd's coffee-house, as disclosed in the testimony of the witness Secretan. The opinions, however, entertained at Lloyd's, in relation to legal questions, are not, in themselves, entitled to any great consideration; they certainly ought to weigh very light in comparison with such as might be pronounced in Westminster Hall.

Hitherto we have considered the case only in relation to rights claimed by the plaintiffs, resulting directly from the contract entered into by the defendants, as having been made for the benefit of the former. But it was contended for them

in argument, that, although they may not be entitled to sue directly on the policy, yet, having paid more than a rateable portion of the loss occasioned by the destruction of the property insured, (in a risque taken both by themselves and the defendants) they are, of right, subrogated to the actions and claims of the owners, and should have refunded to them a rateable portion of the sum which they have paid in consequence of the loss. This would be to consider the contract sued on, in the nature of a double insurance, which the pleadings do not authorise.

But if they did, it would not benefit the plaintiffs, for the sixth article of the general conditions of insurances, as established by the Louisiana State Insurance Company, was not complied with, at the time the policy was subscribed; consequently the owners themselves could not have recovered from the last insurers, more than the amount of loss not covered by the assurers in London.

The plaintiffs certainly cannot justly pretend or claim to be subrogated to rights and claims which the owners had not themselves acquired. This proposition is so self-evident that the notice of it might well have been omitted.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court cannot be avoided, reversed and annulled: and it is further ordered, adjudged and decreed, that judgment be here entered for the defendants and appellants, with costs in both courts.