## SUPERIOR COURT OF BALTIMORE CITY

Filed March 6, 1900.

### RICARDS, LEFTWICH & CO.
### VS.
### ROYAL INSURANCE COMPANY.

*William L. Marbury* for plaintiff.
*George Whitelock* for defendant.

STOCKBRIDGE, J.—

The prayers offered in this case present a number of interesting questions in the law of insurance, some of which are not entirely free from difficulty.

The plaintiffs were the owners of thirty-six hogsheads of tobacco, which had been purchased by them at points in North Carolina, and was in transit for Kobe, Japan, and while in the course of such transit the goods were destroyed by fire upon the dock of the Baltimore Steam Packet Company, on the 17th of May, 1898. At the time of the loss the plaintiffs had a policy in the Royal Insurance Company of Liverpool upon tobacco which might be contained in the frame warehouse of said transportation company, and this it appears from the evidence was the same as the dock of the company. This policy contained the usual conditions of fire policies, and in addition thereto had the permission for other insurance without notice until required, and the 80 per cent. clause endorsed on it.

This policy was taken out on the 28th of March, 1898, and was in force at the time of the fire. In addition to this insurance the plaintiffs held an open marine policy, originally issued on the 22d of October, 1879, by the Insurance Company of North America, by which the tobacco of the plaintiffs was insured in transit between points in North Carolina and Virginia and Baltimore, and by an endorsement, dated the 1st of July, 1880, the policy was extended to cover shipments made from the same initial points to New York as well. This was the only policy ever issued by the Insurance Company of North America, but a custom of dealing grew up between this company and the insured, by which when shipments were made they were entered in a book kept for that purpose, and which said entries also contained the point of destination, amount of the risk assumed by the insurer, and the amount of the premium. The loss having occurred the full amount of the loss was paid by the Marine insurer, and subsequently a portion was refunded by the plaintiffs to such Marine Insurer, and in this suit the plaintiff seeks to recover that amount from the Royal Company, as being its proportionate amount of the loss.

The first prayer of the plaintiff raises the question as to which was the prior policy, or to state it a little differently, whether the acceptance of the risk by the Insurance Company of North America and the entry in the book made in May, 1898, constituted the contract between the parties, or whether that declaration and acceptance of the risk must be referred to, and be deemed as of the date of the original policy issued in 1879. The cases of Whiting vs. Insurance Company, 15 Md. 311; Deming vs. Merchants Cotton Press, 90 Tenn., 309, and the Corporation of London Assurance vs. Patterson, 28 Ins. Law Journal, 398, were relied upon as supporting the latter view. But not one of these cases meets the requirements of the present case. There does not appear to have been in any of those cases, as there was in this, a total change in the nature of the risk as between the original policy, and the subsequent declaration of the risk, moreover the rate of premium must have been entirely different for the voyage from North Carolina points to Kobe, Japan, from what it was under the terms of the original contract as between the same initial points, and either Baltimore or New York. In view of these marked differences it seems to me that the rule for the determination of the inception of the contract, and therefore the question of the priority of contract comes more nearly within the rule laid down in the cases of the Commercial Insurance Co., vs. Cropper, 21 Md. 311; Schaefer vs. Marine Ins. Co., 33 Md. 109, and Orient Ins. Co. vs. Wright, 23 Howard, 401, and the first prayer of the plaintiff will be granted with a slight modification, in connection with the fifth prayer of the defendant.

The second prayer of the plaintiffs, when contrasted with the fifth prayer of the defendant, will be found as stating a position which would be inconsistent with that prayer if granted, and as for reasons which will be assigned in a few moments such fifth prayer will be granted, the second prayer of the plaintiffs will be refused.

The third prayer of the plaintiffs deals with the question of waiver, and will be granted in connection with the seventh prayer of the defendant. The question of waiver of proof of loss is sometimes a question of law, but more often a question of fact to be found by the jury, or court sitting as a jury, and the authorities are in entire accord in holding that a distinct denial by the insurer of his liability, or an unqualified refusal upon the part of the insurer to pay the loss, constitutes a waiver; but where, as in this case, the acts of the defendant company and language used by its agents as testified to, do not amount to a direct denial or unqualified refusal; the question as to what was the denial of liability, if any, and whether it amounted to such refusal, is a question properly to be left to the jury.

The fourth prayer of the plaintiffs will be refused, it being deficient in certain elements proper to have been included in it.

Of the defendant's prayers, the first will be rejected. With respect to the second and third prayers, which deal with the matter of the payment made by the Insurance Company of North America to the plaintiffs, it is sufficient to say, that assuming that the Insurance Company of North America did, by its payment of June 4th, 1898, pay to the plaintiff more than its proportionate part of the loss, and fully indemnified them, such payment of a greater amount than its share, was purely voluntary, and would not have constituted a ground upon which to base a claim for contribution from a co-insurer, and because voluntary and not entitled to contribution, cannot be availed of as a defense to a suit upon another policy.

Alliance Ins. Co. vs. Louisiana Ins. Co. 8 La. 1.

Lucas vs. Jeffenser Co., 6 Cowen, 635.

Fitzsimmons vs. City Ins. Co., 18 Wis. 234.

Hanover Ins. Co. vs. Brown, 77 Md. 64.

And these two prayers will also be rejected.

The fourth prayer of the defendants is objectionable, in that it tends to confuse rather than define a specific proposition; thus it may have been intended by it to raise the question of the relative priority of the two policies; or the question of intent as between the plaintiffs and the Royal Insurance Company as to the scope of the policy to be issued, and which was, in fact, issued by that company, and that prayer will, therefore, be refused.

By the fifth prayer of the defendants, the court is asked to rule that the thirty-six hogsheads of tobacco, which constituted the loss in this case, were not covered by the policy of insurance issued by the Royal Insurance Company. The language of the policy of the Royal Insurance Company descriptive of the risk, is, that it is upon tobacco and tobacco stems and packages for and containing the same, * * * contained in the frame warehouse of the Baltimore Steam Packet Company. The question which is raised by this prayer is, therefore, what was the intention of the parties as to this policy of insurance, with respect to the particular thirty-six hogsheads in question? The language of the policy is not upon any specific hogsheads, it is broad enough to have covered the tobacco in question, or any other tobacco which the plaintiffs might have had in such warehouse during the time the policy was in force, and where the specific chattel which is the subject of the risk is not described in the policy, where the descriptive language used is general in its terms, applicable to a wide variety of goods and chattels, any of which will sufficiently gratify the description, there is one method—and but one method of determining whether or not the property is covered by the policy, and that is, was it the intention of the parties to the contract to cover thereby specific property. The evidence upon this point is chiefly that furnished in the testimony of Mr. Leftwich himself; he speaks of the purpose of the taking out the policy being to cover "odds and ends" which might be upon the wharf of the Transportation Company. Such an expression as this used with the taking out of the policy in the Royal Company looks to something very different than an intention upon his part to thereby provide himself an indemnity against a loss of property worth more than four

times the amount of the insurance so taken out. Moreover, the witness further testifies to the lapse of a considerable period of time, fully thirty days after the loss had occurred, before he reached the conclusion that this particular loss came within the policy issued by the Royal Company. Such a condition of facts is wholly and absolutely inconsistent with an intent to provide indemnity for his firm for this particular property by the taking out of the policy now sued. The intention, therefore, was absent, and there having been no intention to cover by the Royal policy these thirty-six hogsheads of tobacco, it must follow that no general words of description in the policy can be made to embrace a risk not in the contemplation of the parties at the time when the policy was issued, and the defendant's fifth prayer will, therefore, be granted.

By the sixth prayer the court is asked to rule as matter of law, that there is no evidence sufficient to show a valid waiver of the filing of preliminary proof. Upon this point there was some conflict in the testimony, and to grant this prayer would be for the court to pass as a matter of law upon the relative probative value to be assigned to the conflicting evidence. That is a matter which should rather be left to the jury, or the court sitting as the jury, and the rule of law, therefore, is more correctly stated in the seventh than in the sixth prayer of the defendant. The sixth prayer will accordingly be rejected and the seventh granted.

From what has already been said in another connection the defendant's eighth prayer will be rejected.