The new Ford automobile owned by the community of acquets and gains between plaintiff and his wife was seriously injured from collision on November 26, 1941. He sues the defendant, a corporation domiciled in Bloomington, Illinois, for the amount necessary to restore the car to its former good condition, alleging that the defendant, by policy issued to the wife on October 29, 1941, insured her against loss of the character for which recovery is sought.
Defendant, in answer, admits the issuance of the policy and that the car was damaged, but denies liability for the reason that at the request of plaintiff said policy had been canceled and another issued in lieu thereof without collision coverage, all of which occurred prior to the date of the accident causing the alleged damages.
Plaintiff prevailed below and from a judgment in his favor for $563.56, defendant appealed to this court.
The facts of the case are largely not in dispute. Plaintiff, in his wife's name, applied to defendant's agent in the City of Shreveport, Louisiana, for a policy of insurance with coverage against loss from physical injury to others, property damage and damages of the character for which sued. The agent advised plaintiff that all said protection would cost him $49.30 for a term of six months. Whereupon, plaintiff delivered to the agent his check for that amount on a local bank, dated October 10, 1941, but payable on the following November 1st. Prior to sending the application to the company, the agent recalculated the premium and decided that the correct amount was $36.80. He informed plaintiff of that fact and received from him a check for that amount of the same tenor of the check for $49.30. The agent erroneously reached the conclusion that the premium for collision protection was $25 per annum, whereas that amount would pay for protection for only six months. He figured that for this term plaintiff would be *Page 705 
due only $12.50. This amount, plus $24.30 for the other protection, made up the amount incorporated in the second check and the application. The check for $49.30 was destroyed.
Defendant's agent forwarded to it the application and the new check promptly after the check was delivered to him. Policy carrying the coverage for which applied issued on October 29th, effective from October 10th, and was mailed to the agent for delivery with the advice, as shown therein, that the correct premium due for the term of six months was $49.30. He was requested to collect the difference between this amount and the check of $36.80, or $12.50.
On or about November 1st the agent carried the policy to plaintiff and after being informed of the error and correct balance due, plaintiff evinced a disposition to recede from the whole matter, but on being importuned by the agent not to do so, finally decided, at the agent's suggestion, to eliminate the collision insurance and carry the other. He refused to pay the extra $12.50. The policy was left with plaintiff under the distinct agreement that a new one not carrying collision coverage would be procured and that the $12.50 would be refunded to him. The agent corresponded with defendant on the subject and on November 13th wrote it as follows:
"We want to cancel the 80% Collision coverage under this policy and ask that you send us a new policy covering Public Liability, Property Damage, and Comprehensive, cancelling the 80% Collision flat. It is necessary to do this in order to satisfy the assured and we ask that you give the matter your prompt attention.
"Old policy to be returned.
"Chas. B. Foster.
"P.S. Please return us check in the amount of $12.50 to cover the return premium under collision."
On the date of this letter defendant wrote Mrs. Simmons requesting payment of the $12.50, stating therein that it was felt that she desired to continue the insurance in effect.
Defendant acceded to its agent's request and on November 24th issued new policy to plaintiff's wife carrying the same coverage as the first one, excepting collision insurance. It was made effective from October 10th. On the same day defendant issued check for $12.50 to Mrs. Simmons, which was forwarded with the new policy to the Shreveport agent for delivery, but before this could be done the accident occurred. Plaintiff thereafter refused to accept the new policy and the refund check, taking the position that the old policy as written was in full force when the accident happened and that from its terms and conditions the rights of the parties should be weighed and determined. He now contends that the agreement between himself and defendant's agent was that the old policy as written should remain in full effect until the new policy was delivered and refund made of the $12.50. The record does not support this contention.
The old policy was left with plaintiff as ad interim protection against loss arising from the operation of the car, save collision, and he accepted the policy only on this condition and to this extent. It is certain he would not have accepted delivery of the policy at all had not the agent agreed to the elimination of the collision clause and the return to him of the $12.50 paid on that account. He positively admits that had the new policy and the $12.50 been tendered to him prior to the accident, he would have accepted both and given up the old policy, but frankly says that since such a tender was not made, his attitude underwent a change.
No obligation rested upon the defendant to accept the application for insurance on the car, and it did not do so unqualifiedly. It was willing to write a policy with the desired coverage, but, as regards collision, at a rate double that contained in the application, and did so. This action was in effect a counter proposal to plaintiff which he was free to accept or reject. He chose to reject it. He not only refused to pay the extra $12.50 but threatened to repudiate the policy as a whole. Concerning the question here discussed, 29 American Jurisprudence, pages 154, 155, § 140, has this to say:
"To be effective as a completion of the contract, an acceptance of an application or proposal for insurance, like the acceptance of offers generally, must be substantially upon the terms offered, and there must not be a variance between the application or proposal for insurance and its acceptance. If the acceptance is upon different terms, or is in effect a counterproposal, the contract of insurance is not complete until the applicant has signified his acceptance of the *Page 706 
new terms. For this reason, the issuing of a policy at a higher premium rate than that specified in the application will not constitute an acceptance. * * *". See also Annotation, 81 A.L.R. 333, 334; Gonsoulin v. Equitable Life Assurance Society of the United States, 152 La. 865, 94 So. 424; Todd v. Piedmont 
Arlington Life Insurance Company, 34 La.Ann. 63; Blackwell v. Roseberry et al., La.App., 154 So. 641; Alliance Marine Assurance Company v. Louisiana State Insurance Company, 8 La. 1, 28 Am.Dec. 117; Cooley's Briefs on Insurance 2d Ed., Volume 1, 673, 674.
The fact that plaintiff was to be refunded the $12.50 paid by him without any deduction whatever is a strong circumstance against the contention that until the new policy was delivered and $12.50 repaid to him, he was protected under the old policy against loss from collision. It means that he would have had this protection for a month or more for nothing. Insurance companies do not incur liability in this manner.
In view of the established facts of this case and the law applicable thereto, it seems obvious to us that the collision provision of the policy never became effective and, this being true, no obligation on the insurer or right in plaintiff on any account emanated therefrom. It was by plaintiff's own voluntary action completely eliminated from the contract and made abortive for all purposes. This is defendant's position and argument here.
Plaintiff contends that the policy with increase in premium for collision insurance was accepted by him and became binding on defendant notwithstanding he admits he refused to pay the additional $12.50 and expected return of like amount paid by him when the application was made.
In support of the contention that the policy as originally written became effective, plaintiff refers to paragraph 2 of defendant's answer, wherein the issuance of the policy is admitted and it is additionally averred therein that it "became effective on October 10, 1941", but was subsequently canceled. This is merely a legal conclusion. It is not binding upon the pleader since testimony was introduced without objection disproving the correctness of the conclusion, if intended to embrace the collision clause.
The fact that defendant wrote Mrs. Simmons on November 13th, requesting payment of the additional $12.50 is also pointed to as evidence that defendant considered the policy in all respects in effect at that time. On this date defendant, so far as the record shows, did not know that plaintiff had refused to accept the policy with the collision provision therein, but evidently assumed it had been accepted by him. Its agent only requested new policy in letter of November 13th, the same day the letter was written to Mrs. Simmons. The letter demanding payment of the $12.50 has not the significance attributed to it by plaintiff.
The trial judge gave written reasons for judgment. He reached the conclusion that the policy became effective in all of its parts and clauses; that plaintiff's proposition to eliminate the collision provision, accept new policy without that provision and be refunded the $12.50 paid on that account, was simply an offer and although accepted by defendant prior to the accident, the acceptance was not communicated to plaintiff until the accident had occurred and therefore did not become binding on plaintiff. Had the policy as a whole become effective as found by the lower court, its reasons for judgment would have been unanswerable, but since, as we have found, the original policy as a whole never became effective because not unqualifiedly accepted by plaintiff, such reasons are not tenable.
The policy provides that it may be canceled by either party by giving written notice of the purpose to do so. Plaintiff argues that because this requirement was not followed, no cancellation was effected. This provision can apply only to a policy which has become effective through acceptance of its terms and conditions by both insured and insurer. It does not apply to a case wherein the facts appear as herein.
The burden of proving nonliability under the collision clause rested upon defendant. We think the record sustains us in the opinion that this has been done.
For the reasons herein assigned, the judgment appealed from is reversed, annulled and set aside, and plaintiff's suit dismissed and his demand rejected at his cost. *Page 707