## McCURDY v. DILLON.

1. ATTORNEY AND CLIENT—CONTRACTS—PUBLIC POLICY—HUSBAND
AND WIFE.

A contract between an attorney and a married woman, where-
by the attorney should receive as compensation for his ser-
vices a certain per cent. of the alimony to be allowed in a
divorce case and of the damages to be recovered in an action
for assault and battery against the husband, a minimum sum
being agreed upon as the basis of computation in case of set-
tlement, is contrary to public policy, as tending to prevent a
reconciliation between husband and wife, and therefore void.

2. MARRIED WOMEN—CONTRACTS—SERVICES OF ATTORNEY.

A married woman may make herself liable for the services of
her solicitor in a divorce suit.

3. SAME—VOID CONTRACT.

A valid contract by a married woman to pay an attorney a
retainer is not abrogated by a subsequent agreement for com-
pensation which is contrary to public policy.

4. SAME—QUANTUM MERUIT.

Where an attorney's contract for compensation for services
rendered a married woman was void as against public policy,
he could recover what his services were reasonably worth.

Error to Shiawassee; Smith, J. Submitted October 23,
1903. (Docket No. 75.) Decided March 8, 1904.

*Assumpsit* by John T. McCurdy against Susan Dillon
for services rendered. From a judgment for plaintiff on
verdict directed by the court, defendant brings error.
Reversed.

*Watson & Chapman*, for appellant.

*John T. McCurdy, in pro. per.*

MOORE, C. J. Plaintiff sued defendant to recover for
services rendered her as attorney in a case commenced by

*capias* by her against her husband, and for services rendered as solicitor in a divorce case commenced by her against her husband; also for expenses incurred by him in the two cases. Both of the cases were settled before the plaintiff brought this suit. No evidence was offered on the part of the defendant, and the trial judge directed a verdict in favor of plaintiff for the sum of $431.35. The case is brought here by writ of error.

The items going to make up the verdict were, expenses, $81.35; retainer in divorce case, $100; percentage agreed upon in *capias* case, $250. The defendant claims the agreement as sworn to by the plaintiff was void as against public policy; citing *Hackley* v. *Muskegon Circuit Judge*, 58 Mich. 454 (25 N. W. 462); *Jordan* v. *Westerman*, 62 Mich. 170 (28 N. W. 826, 4 Am. St. Rep. 836). It is also claimed that services performed under a void contract can be recovered only under the *quantum meruit.*

It is Mr. McCurdy's claim that defendant sent a request by her son to him to act as her lawyer, and requested him to come to her house, as she could not come to him; that he went to her house after preparing some necessary papers, and had a talk with her about her cases and his pay, and, in reply to her inquiry as to his fee, told her:

" 'I will charge you $100 in the divorce case for retainer fee, and $50 in the law case as a retainer fee, and, when we get among your friends, we will make a new bargain;' and then I said, 'The question of retainer fee can be taken care of at that time.' She says, 'Very well; I will do that, and I will pay you.' She says, 'What else will you charge me for?' I said: 'I will charge you for the work I did yesterday,—making the examination and preparing the bill of divorce in the case,—$25. I shall charge you $15 for coming out here and leaving my office today. I will charge you whatever the liveryman charges me for the livery rig, and whatever I am obliged to pay Mr. McBride.' We turned to him, and he said he ought to have $5 for his day's work. She said, 'I am willing to pay the retainer fee, the charge you make, and your expenses.' It was under that agreement that I took the lady's case. I completed the bill of complaint,—read it over to her."

It is his claim that, after he commenced the cases, he had a further talk with her about his fees, and what she could probably recover in the two cases, and the fact that defendant before this had litigation with her husband, which she settled without paying her lawyers.

"I said: 'In my opinion, you ought to have about $3,600 in the chancery case; that would be my best judgment; but,' I said, 'they have talked a settlement of $2,000. Will you take that?' She said: 'No; I won't take $2,000. It isn't enough.' I said: 'Would you be willing to use $2,000 in the divorce case as the minimum sum that you would accept in settlement, and $1,000 as the minimum sum that you would accept as a settlement in your assault and battery case, in case you should discontinue your suits, and figure up 25 per cent. on that, which is to be my pay for the services in this case, providing you discontinue them and settle with your husband as you see fit?' She turned to Mr. Markham and said, 'What would that amount to?' Mr. Markham took a piece of paper and figured it. He said it would be $750. She said, 'For both matters?' I said: 'Don't figure them together. I wish to keep them separate. The law case is one case, and the chancery case is another. That would be $250 for the law case, and $500 for the divorce case, on the minimum sum of $1,000 for the law case, and $2,000 for the chancery case.' She says, 'Yes; that is all right.' Then she said, 'Mr. McCurdy, you spoke about a retainer fee.' I said, 'Yes; I told you that I would make that right.' I said, 'If this is satisfactory, if satisfactory to you, as far as the retainer fee is concerned, we will consider that is merged into the new contract.' In other words, I wasn't to charge $50 in the law case, or $100 retainer fee in the divorce proceedings, but I was to take a per cent.,—charge her an amount equal to 25 per cent. of the amount she would recover. In case she dismissed her suit, I was to receive my pay on the minimum sum of $1,000 for the assault and battery case, and $2,000 for the divorce case, making $750, and the little court expenses; and that was agreed upon."

Upon the trial he apparently conceded the last agreement, so far as it related to the divorce case, was void, and did not take the place of the former agreement that he should be paid in that case a retainer fee of $100.

We think that portion of the contract providing for a percentage of what should be recovered in the divorce case, the minimum amount of which was fixed at the sum of $2,000 in case of settlement, is directly within *Jordan v. Westerman*, 62 Mich. 180 (28 N. W. 826, 4 Am. St. Rep. 836). In that case the court said, among other things, as follows:

"The power to decree alimony is statutory, and incident to the jurisdiction in suits for divorce, and the statute prescribes the entire powers and regulations on the subject. In fixing the amount and time of payment, the court is entitled to have all the facts which would influence its decision laid before it. Can it be supposed that the court would make an allowance to the wife of a gross sum for permanent alimony, to be paid by the husband out of his estate, if it was possessed of the fact that the wife had contracted to pay one-half or any other portion of what she should be awarded to her solicitor?

"Such contracts are against public policy for another reason. Public policy is interested in maintaining the family relation. The interests of society require that those relations shall not be lightly severed, and that families shall not be broken up for inadequate causes or from unworthy motives; and, where differences have arisen which threaten disruption, public welfare and the good of society demand a reconciliation, if practicable or possible. Contracts like the one in question tend directly to prevent such reconciliation, and, if legal and valid, tend directly to bring around alienation of husband and wife, by offering a strong inducement, amounting to a premium, to induce and advise the dissolution of the marriage ties, as a method of obtaining relief from real or fancied grievances which otherwise would pass unnoticed. The evil pointed out is well illustrated in this case. Here every effort to effect a reconciliation was opposed and thwarted because it was for the interest of the solicitors, under their contract, that there should be no reconciliation."

We are unable to see why the reasoning employed to show the contract was void as against public policy does not apply with equal force to that portion of the contract relating to the *capias* case. It is evident that the price to be paid before such a case can be settled will influence

or may influence the question of settlement, and might stand in the way of a reconciliation between the parties.

It is said this court has upheld an agreement between an attorney and his client as to compensation based upon a percentage of the alimony allowed; citing *Chadwick* v. *Walsh*, 70 Mich. 627 (38 N. W. 602). A reference to the case will show the validity of the agreement was not questioned.

The contract for a percentage, then, being void, the next question presented is, What should be the rule of recovery? It is the law of this State that a married woman may make herself chargeable for the services of an attorney employed by her in a divorce suit. *Wolcott* v. *Patterson*, 100 Mich. 227 (58 N. W. 1006, 24 L. R. A. 629, 43 Am. St. Rep. 456). If a valid contract for retainer fees was in fact made, it would not be abrogated because an attempt was made to merge it in a void contract. See *Dietrich* v. *Hoefelmeir*, 128 Mich. 145 (87 N. W. 111). On the other hand, if no contract was made as to how Mr. McCurdy should be paid, except the void contract, then he would be entitled to recover what his services were reasonably worth. *Cadman* v. *Markle*, 76 Mich. 448 (43 N. W. 315, 5 L. R. A. 707).

Judgment is reversed, and new trial ordered.

The other Justices concurred.