# CHARLESTON

BUFFINGTON *et al* v. LYONS.

Submitted January 16, 1912.    Decided October 15, 1912.

APPEAL AND ERROR—*Instructions—Prejudicial Error.*

The refusal of a proper instruction or the giving of an improper one raises a presumption of injury and prejudice, warranting a new trial, unless the court can see from the record the complaining party was not injured.

71 W. Va.

Error to Circuit Court, Cabell County.

Action by P. C. Buffington and others against John E. Lyons. Judgment for defendant, and plaintiffs bring error.

*Reversed.*

*Northcott & Douglass* and *Enslow, Fitzpatrick & Baker,* for plaintiffs in error.

*Holt & Duncan,* for defendant in error.

POFFENBARGER, JUDGE:

This case involves only rulings upon instructions and a motion to set aside a verdict for the defendant in an action by agents to recover commissions on a sale of timber, alleged to have been made by them or through their efforts.

Lyons authorized Buffington and McVay, by a written instrument, dated August 16, 1906, to sell certain Raleigh county timber for him, on land known as the "Prince Tract," for $31,000.00, and thereby agreed that they might have, as commission for their services, all they could obtain for it in excess of said sum, but their agency was not made exclusive. He expressly reserved the right to sell it himself or put it in the hands of others for sale.

Having obtained this authority, they sought a purchaser through the Strubble-Frazier Co., a Pittsburg firm of brokers, who arranged a meeting between them and one C. H. Williams at Beckley, in Raleigh county. They took Lyons with them. Williams professed to be acting for himself and some associates, whose identity he did not disclose. After the timber had been examined, a contract was entered into, signed by Lyons, Buffington and McVay, as parties of the first part, and Williams, as party of the second part, by which a sale of the timber was made to Williams for the sum of $40,000.00, payable as soon as a survey and plat could be made and an abstract of title prepared. Lyons remained at Beckley a day or two after the paper was signed to have the survey made. Later he, Buffington and McVay went to the Union Savings Bank in Huntington and made an arrangement with Mr. Fuller, its president, as to which there is some conflict in the evidence, but Lyons left there a draft for the purchase money, signed in blank and to be filled out, when the identity of the purchasers should be

ascertained. Fuller says he was to deliver a deed for the timber to the drawees on payment of the draft, receive the money and divide it, giving Lyons $31,000.00, and distributing the balance as commission among the agents. A few days later, Lyons sent Fuller a deed in which The Strubble-Fraizer Company, of Pittsburg, was made the grantee. The draft was never paid nor the deed delivered. Buffington, McVay and Williams all deny they or any of them ever directed a deed to be made to the Strubble-Frazier Company. Some or all of them do say, however, it was agreed he should send that firm the abstract of title, and he did. He claims to have had written direction from Buffington to make the deed to them, which he says has been lost, and one Mambach who wrote the deed says he had the letter or memorandum, signed by Buffington, at the time of the preparation of the deed.

Nearly a year later, the timber, together with some on adjoining lands, was sold and conveyed by Lyons to T. B. Palmer and I. W. Seaman of Pennsylvania for $44,500.00, the men who, Williams says were his undisclosed associates, in the contract of sale made to him. Lyons claims he never knew Williams was buying for them or was in any way connected with them in the negotiations and there is no direct evidence that he did. Williams had them in view as purchasers, and Buffington and Mc-Vay knew it, for they came with Williams to Huntington after the contract was signed, and went from there to look over the timber. Palmer also admits Williams turned over to him the contract and a certain bond on his return from the first trip to Huntington and Beckley. Williams swears he was a partner with Palmer and Seaman in the Palmer & Seaman Lumber Company. Palmer denies this, saying he was not and never had been a partner, but admitting his acquaintance with him and his employment by the firm as general manager after the contract of September, 1906, had been made.

One A. J. Frazier, of Corsica, Pennsylvania, who, Williams says, was sent by Palmer to look at the timber at his suggestion, got Lyons and Palmer and Seaman together at the Ft. Pitt Hotel in July, 1907, and Lyons there gave Palmer and Seaman an option on the property, which was extended until sometime in August, when a sale was made under it. Palmer

and Seaman knew Buffington and McVay were connected with the land in some way and no doubt as agents of Lyons, as is indicated by the facts already stated.  There is no direct evidence that Lyons ever met them prior to the 15th of July, 1907, or knew they had been associated in any way with Williams in any previous negotiations relating to the timber.  Lyons, however, was well acquainted with Buffington and saw him and talked with him frequently at Huntington between September, 1906, and July, 1907, and in these conversations this timber was often a subject matter of discussion.  Necessarily so, for Buffington was trying to perfect the contract of 1906 and Lyons says he was equally anxious to close it up.  It is not shown that A. J. Frazier had any connection with the Strubble-Frazier Company, Williams says he had not.  There is no proof that Williams was either willing or able to perform the contract of September, 1906.  That agreement describes him and his associates as parties of the second part, the purchasers, but it was signed by Williams only.  Palmer says he never authorized Williams to make a contract of purchase and was much surprised when he saw the paper.  He says he and Mr. Seaman were unwilling to take the property at the price of $40,000.00, after having examined it, and abandoned the negotiations, but Williams turned all the papers over to Palmer and says Palmer sent Frazier on the land to estimate the timber; Frazier was in the employ of Palmer and Seaman for about a year prior to June 20, 1907; in June, 1907, he wrote Lyons asking for authority to sell the timber; such authority was given; and all this was done at the instance of Palmer and Seaman who met Lyons in Pittsburg by arrangement through Frazier on July 15, 1907.

Five of the seven instructions requested by the plaintiffs were refused.  Their instruction No. 1, if given, would have submitted to the jury the existence of a valid contract of employment of the plaintiffs by the defendant and the making of the contract of September 26, 1906, and required them to render a verdict for the plaintiffs, if they should find that these two contracts had been made.  Their instruction No. 2 would have told the jury the contract of September 26, 1906, the contract of purchase, was enforcible by either party to it in a proper proceeding.  Both of these instructions proceed upon

the theory of a right of recovery on proof of the execution and validity of the two contracts, the contract of agency and the contract of sale, without proof of the readiness and ability of the purchaser to carry the contract into execution, and notwithstanding the failure to execute it.  These omissions, or at least the first one, made the instructions fatally defective.  An agent cannot recover his commission without performance of his contract or proof that he was prevented from so doing by the principal.  *Reynolds* v. *Tompkins,* 23 W. Va. 229; *Parker* v. *Building Assn.,* 55 W. Va. 135.  Instructions No. 3 would have told the jury the reservation in the contract of agency of a right on the part of the principal to sell the timber himself did not relieve him from liability to the plaintiff for the commission, if he sold the timber to purchasers procured by them.  As the subject matter of this instruction is included in instructions Nos. 4 and 5, which the court gave, the refusal thereof was not erroneous.  Instruction No. 6 should have been given.  Its purpose was to tell the jury the plaintiffs might recover if they procured a purchaser at the price and on the terms authorized who would have taken the property, if the principal, ignoring the agent, sold to the purchaser so procured, at the same price and on the same terms, or for a different price and on different terms.  This is well settled law and is not covered by any other instruction given in the case.  Their instruction No. 7 which, if given, would have told the jury the plaintiffs were entitled to recover, if the purchasers of the timber were found by them, even though Lyons negotiated the sale himself, was clearly bad, because it would have been misleading.  Mere discovery of a purchaser by an agent is not enough.  He must bring the parties together and start the negotiations.  Over the objection of the plaintiffs, the court gave one comprehensive instruction, covering the defendant's theory of the case and submitting to the jury, for determination, all questions of fact involved.  This instruction was binding, directing a verdict for the defendant if the jury should find in his favor on the questions submitted, and the rule against giving such instructions, when they do not cover all the issues of fact, is invoked against it.  Our examination of it reveals no defect of that sort.  One part of it requires the jury to find whether the defendant sold the timber

together with timber on adjoining land "without the intervention of the plaintiffs," and, in the absence of any conspiracy or collusion between him and the purchasers, to defeat the execution of·the prior contract. It is said this ignores evidence of the prior sale through the plaintiffs, but we are unable to accept this view. Fairly construed, this part of the instruction leaves it to the jury to say whether the plaintiffs were instrumental in the sale finally made. It neither ignores the evidence on that point nor assumes the fact.

The refusal of plaintiff's instruction No. 6 was prejudicial error. Its purpose was to tell the jury a departure from the price and terms at which the purchasers, procured by the plaintiffs, if they did procure them, a question which the evidence was sufficient to carry to the jury, would not preclude a recovery of the commission. That the sale was made on different terms and at a different price may have been controling with the jury. It may be the very ground upon which they found for the defendant. Had the court told them the departure was immaterial, in case the other facts should be found in favor of the plaintiffs, they could not have based their finding upon the departure from the original price and terms. An error in the giving or refusal of an instruction is presumed to be prejudicial and is cause for reversal, unless the court can see it wrought no injury. *Lay* v. *Coal Co.,* ·64 W. Va. 288; *Ward* v. *Brown,* 53 W. Va., 227.

The judgment will be reversed and a new trial allowed.

*Reversed*