# CHARLESTON.

FRANCES TEARNEY *v.* WM. V. MARMIOM *et als.*

(No. 5720)

Submitted March 8, 1927.    Decided March 15, 1927.

1.    CONTRACTS—*Attempted Illegal Modification of Lawful Contract is Nullity.*

When an illegal modification of a lawful contract is attempted, the modification is a nullity and the contract is unscathed. (p. 394).

(Contracts, 13 C. J. § 468.)

2.    SAME—*Test for Determining How Far Legal Transaction is Affected by Illegal One is Whether Party Seeking Recovery Requires Aid From Illegal Act.*

A test for determining how far an illegal transaction affects

a legal one, is, does the party seeking recovery require any aid from the illegal act to make his case?   (p. 398).

(Contracts, 13 C. J. § 460.)

3.   SAME—*Where Consideration of Lawful Contract is Not Immoral, Subsequent Illicit Relations Between Parties do Not Affect Validity of Contract; Where Immoral Purpose Did Not Enter Into Contract of Plaintiff to Care for Deceased, Subsequent Agreement to Live as His Common-Law Wife Did Not Affect its Validity.*

Where an immoral purpose does not enter into the consideration of a lawful contract, subsequent illicit relations between the contracting parties will not affect the validity of the contract.   (p. 398).

(Contracts, 13 C. J. §§ 402, 486.)

4.   EQUITY—*Court Having Jurisdiction to Specifically Enforce Contract as to Realty Will Enforce it as to Personalty to Prevent Multiplicity of Suits, Though Allegations as to Latter Are Insufficient.*

Pt. 10, Syl., *Custer* v. *Hall*, 71 W. Va. 119; Pt. 9, Syl., *Taylor* v. *Taylor*, 76 W. Va. 469; Pt. 2, Syl., *Davidson* v. *Davidson*, 72 W. Va. 747; Pt. 1, Syl., *Rees* v. *Coal Co.*, 88 W. Va. 4; Syl., *Bryson* v. *McShane*, 48 W. Va. 126, and Syl., *Hurley* v. *Beattie*, 98 W. Va. 125, applied.   (p. 399).

(Equity, 21 C. J. § 48 ; Specific Performances, 36 Cyc. p. 569.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Jefferson County.

Suit by Frances Tearney against Wm. V. Marmiom, administrator, etc., and others on a contract.   From a decree sustaining demurrers to the bill, plaintiffs appeals.

*Reversed and remanded.*

*John T. Porterfield,* for appellant.

*J. Maulsby Smith,* and *Brown & Brown,* for appellee Marmiom.

HATCHER, PRESIDENT:

This appeal involves the sufficiency of a bill, with several amendments thereto.   The circuit court of Jefferson county sustained demurrers to the bill as amended.

The bill, as amended, alleges that the plaintiff is a resident of Pennsylvania; that Edward Tearney, also a resident of that state, died on Jan. 3, 1925; that for about eleven years

prior to his death, during which period he had been in very bad health and was an habitual drinker, plaintiff and her mother had cared for and nursed him, under a contract between him and plaintiff that he would convey to her at his death all of his property for her services; that after she had commenced to take care of him, she lived with him as his common-law wife in the state of Pennsylvania, although he was married at the time, "he having promised her that he would give her all of his property at his death," and having further promised that as soon as he was free from his marriage, he would marry her; that he owned both real and personal property in West Virginia, which had descended to him from an aunt; that the aunt suffered from a malignant form of cancer, and during four years prior to her death the plaintiff cared for and nursed her, under the express promise of Tearney that he would compensate plaintiff for her services in so doing when he inherited his aunt's property; that plaintiff would not have entered into the relation of common-law wife with decedent, nor would she have nursed and cared for him, if she had not relied upon his promises to provide for her at his death.

The bill further alleges that Tearney executed a testamentary paper in plaintiff's favor, valid under the laws of Pennsylvania; that the instrument was typewritten, and having only one witness to Tearney's signature, was invalid as a will in West Virginia; that Tearney was endeavoring in good faith to carry out his contract with plaintiff, and failed to do so only because of his unfamiliarity with the laws of this state. The paper is:

> 3720 N. Broad St.
> Philadelphia, Pa.
> Dec. 22, 1924.

> Being unable, through illness of a serious nature, to appear before an attorney, I am writing this to testify that it is my wish and desire that all my stock, interests, and holdings of whatever nature be transferred to Frances Tearney, and herewith affix my signature.

> (Sgd)    Edward Tearney.

> Witness:
> V. Kelcher.

The plaintiff prays that the instrument be treated as a memorandum of the contract to compensate her for her services, and that the contract be specifically executed by decreeing plaintiff all of Tearney's property in the state of West Virginia.

Forty years ago Freeman, in one of his dependable notes, said that an almost unbroken current of authorities, both English and American, supported the doctrine that a person could make a valid agreement to dispose of his property in a particular way at his death. 66 Am. Dec. 784. The intervening years have wrought no change in that doctrine. *Davidson* v. *Davidson,* 72 W. Va. 747 (750); *Jefferson* v. *Simpson,* 83 W. Va. 274; *Adams* v. *Adams,* 95 W. Va. 187 (194); Underhill on Wills, par. 285; Thompson on Wills, par. 33. An agreement by the promisee to take care of the promisor is a sufficient consideration for such a contract. *Brady* v. *Smith,* 28 N. Y. S. 776; *Smith* v. *Pierce,* 65 Vt. 200; *Goff* v. *Supreme Lodge,* 90 Neb. 578; *Brinton* v. *Van Cott,* 8 Utah 480; *Bryson* v. *McShane,* 48 W. Va. 126. Such agreements may be by parol. A leading case on this proposition is *Rhodes* v. *Rhodes* (N. Y.) 3 Sand. Chy. 305, decided in 1846. In that case Andrew Rhodes was subject to epileptic fits. He orally agreed with his brother Henry that the latter should provide and care for him during his life and as compensation therefor, Henry should have all of Andrew's property. Henry faithfully rendered the services agreed upon and at Andrew's death, the court specifically enforced the contract against Andrew's heirs, holding: "where the consideration consists of services to be rendered, which are of such a peculiar character that it is impossible to estimate their value to the vendor by a pecuniary standard, and the vendor did not intend to measure them by such a standard; the performance of the services will entitle the vendee to a specific performance, notwithstanding the contract was by parol." That case was cited and followed by this court in *Bryson* v. *McShane, supra,* where it was held that the care and support of an aged person under a similar contract constituted services of such particular character as to come within the above rule. A like appli-

cation of that doctrine was made in the recent case of *Hurley* v. *Beattie,* 98 W. Va. 125. See Pomeroy, Spec. Perf, Contracts, 3rd Ed. par. 114, and the exhaustive annotation commencing on p. 279. Where services are incapable of valuation in money, but are performed because of a special contract, equity holds that it would be a fraud on the promisee to withhold from him the 'agreed compensation. *Bryson* v. *McShane, supra,* 130). In such case, equity cannot cause a will to be made, but it will regard the property of the promisor as impressed with a trust in favor of the promisee and will require the heirs of the promisor to dispose of the property so as to carry out the intent of the promisor. Pomeroy, *supra,* par. 191, note 2, p. 490. See also annotation commencing p. 399, Ann. Cases 1914-A.

The services of the plaintiff in caring for Tearney during the long period and under the conditions alleged, are of that peculiar character for which there is no monetary standard. Therefore, the allegations in the bill call for the enforcement of Tearney's covenant to pay for those services. The failure of the testamentary paper as a will, does not prejudice plaintiff's case. As was said in *Hiatt* v. *Williams,* 72 Mo. 214 (215), regarding an invalid will made in an attempt to execute an agreement analogous to the one here: ''The attempt to execute the contract by a will would surely not place the plaintiff in any worse condition than he was before. The will was merely introduced in evidence to support the contract, and it was certainly very strong evidence to show the intent of the father, who doubtless supposed that 'it would accomplish his purpose.'' A memorandum in writing is not essential to plaintiff's case; but the testamentary paper will serve as such within the meaning of the statute of frauds. The statute expressly negatives the need of setting forth the consideration in such a writing, and provides that the consideration may be proven by other evidence. Ch. 98, Sec. 1, par. 7, Code 1923. In *Shroyer* v. *Smith,* 204 Pa. 310, a writing similar to the one here was sought to be treated as 'a memorandum under the statute. It was objected to because it made no reference to the contract for services. In overruling that

contention, the court said, (P. 315), "It is not necessary that the will should set forth the possession of the premises by the devisee, or that there was a contract. These facts must appear, but may be shown by parol proof." The failure of Tearney to place the plaintiff in possession of the property in question is not a valid ground of objection to specific performance in West Virginia. See *Hurley* v. *Beattie, supra.*

From written memorandum filed by the circuit court it appears that its final ruling was based on the theory that the agreement of the plaintiff to live with Tearney as his common-law wife, (which was clearly unlawful), is not separable from the contract to care for and nurse him, and that the illegal contract permeated and destroyed the validity of the other. In so ruling the lower court failed to consider one of the amendments of the bill, which alleges that the agreement of plaintiff to act as the common-law wife of Tearney was made after she had commenced to take care of him under the promise that he would convey to her at his death all of his property in payment for her services. The contract for services, having been made prior to the one for the common-law wife relationship, is severable from the latter in time as well as in substance. The latter may have been a consequence of the familiarity growing out of the first contract, but there is nothing in the bill to support an inference that the prospect of illicit relationship entered into the consideration for the first contract, or that the first was in any way contingent upon the second. The plaintiff's right of recovery depends in no wise on the common-law wife agreement. "The test by which to determine whether or not a demand connected with an illegal contract can be enforced or whether or not the plaintiff requires any aid from the illegal transaction to establish his case." *Alephant* v. *Markham,* 79 Tex. 543. 23 Am. St. Rept. 263, Elliot on Contracts, par. 249, Chitty on Contracts, 16th Ed. Ch. 21, p. 693, Williston on Contracts, par. 1752; 13 C. J. par. 445, p. 502. There is another principle which decisively determines this case in favor of plaintiff. Where any illegality is engrafted upon a legal agreement, the modification is incapable of enforcement. The change is regarded

as a mere nullity, and as such cannot scath the original contract. "A contract void as against the policy of the law cannot affect a previous fair and lawful contract in relation to the same subject." *Britt* v. *Aylett,* 11 Ark. 475; *McCurdy* v. *Dillon,* 135 Mich. 678; *Wilcoxon* v. *Logan,* 91 N. C. 449; *Cain* v. *Bonner,* 108 Tex. 399, 194 S. W. 1098; 3 A. L. R. 874; 15 A. & E. Ency. Law 932; 13 C. J. par. 468, p. 511; Page on Contracts, Sec. 2469. In accord with the foregoing principles, the authorities agree, that where an immoral purpose does not enter into the consideration of a lawful contract, subsequent illicit relations between the contracting parties will not affect the validity of the contract. 15 A. & E. Ency. Law 960; 13 C. J. par. 402, p. 461; 6 R. C. L. par. 125, p. 717; *Viens* v. *Brickle,* 8 La. 11; *Winebrinner* v. *Weisiger,* 3 Mon. (Ky.) 32; *Rhodes* v. *Stone,* 17 N. Y. S. 561; *Potter and Son* v. *Gracie,* 58 Ala. 303; *Henderson* v. *Spratlen,* 44 Col. 278; *McQuitty* v. *Wilhite,* 247 Mo. 163; *Kurtz* v. *Frank,* 76 Ind. 594; *Lytle* v. *Newell,* 24 Ky. L. 188; *Emerson* v. *Botkin,* (Okla.) 109 Pac. 531, 29 L. R. A. N. S. 786. There is elemental justice in the statement by the court in *Succession of Peruiehet,* 23 La. A. 294: "An employer can not pay off a female employee by robbing her of her virtue. Such a method of extinguishing an obligation is not known to the law. If concubinage had been alleged and proved to have been the motive and cause of the parties living together in the same house in the first instance, and the services in question to have been merely incidental to such a state of living, our conclusion might have been different; but such is not the allegation, much less the proof; and we certainly will not presume that such was the fact."

Counsel raise the question as to whether plaintiff can have her contract specifically enforced as to the personal property in West Virginia. It may be admitted that her allegations would not sustain the suit if Tearney's estate consisted of personal property alone. But the court having jurisdiction to enforce specifically the contract as to the real property, may also adjudicate plaintiff's claim for the personal property, "in order to prevent circuity of action and multiplicity of suits." *Custer* v. *Hall,* 71 W. Va. 118 (129).

Counsel also say that since Tearney died on Jan. 3, 1925, and this suit was instituted on June 3, 1925, it was prematurely brought, citing Sec. 7, Ch. 86, Code. The object of that section is to give the personal representative of a decedent six months after appointment, in which to adjust claims without being harassed by litigants. Without admitting that the section applies to this action, the immunity of the personal representative from suit has well established exceptions. The original bill in this case alleges that the heirs of Tearney had deeded away some of his real estate. Under the express authority of *Poling* v. *Huffman,* 39 W. Va. 320, (322 and 324), a suit may be brought by a claimant within the statutory period when necessary to preserve the estate or prevent alienation of the land involved.

In the original bill, plaintiff prayed that "the estate of Edward Tearney be subject to her debts and that she receive compensation for her services", etc. Counsel for defendants suggest that plaintiff could not amend by asking for specific performance of her contract for compensation. The object of the bill is to obtain for the plaintiff compensation for her services. Since the amended prayer relates to the same compensation referred to in the original prayer, the purpose of the suit is not changed and the amendment is not inconsistent. *Rees* v. *Coal Co.,* 88 W. Va. 4; 21 C. J. p. 526, par. 628. The original as well as each of the amended bills contains a prayer for general relief. The specific relief sought is therefore not a determining factor of the pleading. It is the duty of the court under a prayer for general relief to grant any appropriate relief warranted by the averments and the proof. *Taylor* v. *Taylor,* 76 W. Va. 469; *Waldron* v. *Harvey,* 54 W. Va. 608; *Stewart* v. *Tennant,* 52 W. Va. 559.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*