**CUPP et al. v. CHICAGO, R. I. & P. R. CO.**

**No. 49–C–235.**

United States District Court
N. D. Illinois, E. D.

Dec. 16, 1949.

Marion J. Hannigan, of Chicago, Illinois, for petitioner.

Milton V. Thompson and Thomas I. Megan, of Chicago, Illinois, for defendant.

IGOE, District Judge.

The matter herein involves the petition of Sol Andrews, an attorney, seeking adjudication of his rights under the Attorney's Lien Act of the State of Illinois. Smith-Hurd Stats.Ill. c. 13, §§ 13, 14. Said petitioner, Sol Andrews, represented Bennett E. Cupp, plaintiff, in the principal suit, for damages resulting from injuries, including the loss of both legs. It is admitted that Andrews had entered into a contingent fee contract with Cupp whereby Andrews was to receive one-third of any amount recovered by suit or settlement. It is admitted that notice of attorney's lien was properly served upon the defendant railroad, that the principal suit herein was filed by Andrews on behalf of Cupp, and it is admitted that on June 3, 1949, Cupp made a direct settlement with the defendant and signed a stipulation to dismiss the principal case. The defendant, in response to the petition filed by Andrews, alleged that the contingent fee contract of employment between Cupp and Andrews was void and unenforceable for the reason that it was procured by solicitation of Andrews, his agents and runners.

■ It appears to be the settled law of Illinois that a contract of employment of an attorney obtained through solicitation is void and unenforceable in a proceeding to adjudicate such contract and enforce the attorney's lien predicated thereon. Atchison T. & S. F. Ry. Co. v. Andrews, 338 Ill.App. 552, 88 N.E.2d 364; Puls v. Chicago & N. W. R. R. Co., 233 Ill.App. 625; Brink's, Inc. v. Gravesen, 309 Ill. App. 571, 33 N.E.2d 497; People ex rel. v. Berezniak, 292 Ill. 305, 127 N.E. 36; Ingersoll v. Coal Creek Coal Co., 117 Tenn. 263, 98 S.W. 178, 9 L.R.A.,N.S., 282, 119 Am.St.Rep. 1003, 10 Ann.Cas. 829.

It appears from the evidence that Cupp was injured on the night of December 6, 1948 while working for the defendant railroad as a brakeman at Moline, Illinois.

Said Cupp and his wife and two children lived in the home of Walter W. Hobert at Milan, Illinois, a small town adjoining the towns of Moline and Rock Island.

It is petitioner's contention, as testified to by himself and Walter G. Candy, a so-called "investigator" for Andrews, that he first learned of the case on December 10, 1948 when Andrews received a telephone call from a man who identified himself as Walter Hobert. Hobert said he was calling at the request of Jane Cupp, the wife of the injured man, and Hobert inquired whether petitioner was the attorney Andrews who had relatives from Arkansas. Andrews testified that Hobert stated that Jane Cupp knew of him (Andrews) through his sister-in-law, Hazel Bumpass from Arkansas who married Andrews' brother, and asked that he please come down to see about her husband's case against the railroad. Andrews advised that it would be impossible for him to make the trip within the next few days, but that he would send some one to investigate the matter. It was further testified to by Andrews and Candy that following this conversation, he sent Candy to investigate the case, that Candy went to Rock Island and thence to Milan on December 11th, and stayed in that vicinity until Andrews' arrival about 11:00 p. m. the night of December 16th and until consummation of the contract of employment with Cupp on December 17th. Upon Andrews' arrival at the Fort Armstrong Hotel, Rock Island, Illinois the night of the 16th, he was met by Candy, accompanied by Mr. and Mrs. Walter Hobert and Jane Cupp. The next day Andrews and his secretary took Jane Cupp in Andrews' automobile to the Moline Public Hospital where, upon Jane's recommendation, Cupp signed a contract employing Andrews as his attorney. In short, petitioner's theory is that he was invited to come to see the Cupps, and that the contract of employment with Cupp was made following this invitation and Jane Cupp's recommendation of Andrews to her husband.

It is undisputed that throughout these transactions Candy was the authorized representative or agent for Andrews, and it

is undisputed that on the night of December 7, 1948, Andrews and Candy stayed at the Orlando Hotel at Decatur, Illinois, departing therefrom sometime on December 8th.

Several witnesses testified that on the evening of December 8th, Candy appeared in Milan, Illinois.

There is evidence that Candy approached police officer Robert T. Lindsay and Cupp's mother, who lived at the Lindsay home, and then approached Cupp's wife at the Hobert home, all in an attempt to solicit Cupp's claim against the railroad for Andrews. There is evidence that in the course of his efforts, Candy visited Cupp in his hospital room in an endeavor to obtain Andrews' employment as Cupp's attorney. There is evidence that Candy paid to Walter W. Hobert the sum of $300 for Hobert's aid in soliciting Cupp's case for Andrews. This payment of $300 to Hobert was evidenced by a receipt dated December 17, 1948. Candy was unsuccessful in his attempt to induce either Cupp or his wife to send a telegram or other communication to Andrews requesting him to take the case. Further, no contract of employment had been obtained from the Cupps until Andrews himself arrived on the scene. On December 17th, Andrews, his secretary, and Jane Cupp did go to the Moline Public Hospital and there Andrews obtained Cupp's signature to a contract of employment. While at the hospital, Andrews obtained a statement from Cupp which included the following: "I have this day retained Sol Andrews as my attorney at my wife's recommendation. She is acquainted with Hazel Bumpass, who is married to Sol Andrews' brother. I have requested Mr. Andrews, through my wife, to visit me at the Moline Public Hospital, Room 204, Rock Island, Illinois, of my own free will and without being solicited by anyone on behalf of Mr. Andrews to do so."

In the trial of this case, the Cupps denied ever having heard of Hazel Bumpass and the evidence is undisputed that Hazel Bumpass lived in Little Rock and Hot Springs prior to her marriage to Sol Andrews' brother, Noah, and has resided continuously in the vicinity of Chicago for the past 12 to 15 years. Jane Cupp at the time of her husband's accident was 22 years of age, and prior to September, 1948 had spent her life in the vicinity of Marianna, Arkansas. At the time of Hazel Bumpass' marriage to Noah and departure from Arkansas, Jane Cupp was about 10 years of age and had never been in little Rock or Hot Springs.

The Cupps further deny that they had ever heard of either Andrews or Candy prior to Candy's appearance following the accident and injury.

Mr. Andrews testified that the statement signed by Cupp on December 17th was typewritten by his secretary upon Andrews' own typewriter which he carried to Rock Island with him. The evidence is quite conclusive, as demonstrated by Herbert J. Walter, a handwriting expert, that Andrews' typewriter, which was used in typing the statement for Cupp's signature, was also used in typing the receipt dated December 17, 1948, which Hobert signed acknowledging receipt of $300 from Candy. Although both Andrews and Candy denied ever having paid Hobert any amount, or ever having seen the receipt executed by Hobert, this receipt bore on the bottom thereof the words, "Miland Ill Town Marshall." The handwriting expert testified that these four words were in the handwriting of Candy.

After the principal case was settled, and on July 24, 1949, Andrews went to Hobert's home and procured from him a statement written in Hobert's own hand to the effect that he (Hobert) had on December 10, 1948, called Andrews, upon Jane Cupp's request, asking Andrews to come and accept employment in her husband's case. Hobert testified that he wrote out such statement at Andrews' request. Hobert further testified that as a part of the deal between himself and Andrews, Andrews agreed to return the $300 receipt dated December 17, 1948, signed by Hobert. There is also evidence that Hobert's receipt together with a photostat of the statement written July 24th, was returned to

Hobert in a registered envelop containing the return address of Andrews' sister.

The decision in this case turns on the disputed question of fact as to whether this case was solicited by or on behalf of Andrews, and this turns largely on the activities of Candy. If Candy and Andrews are to be believed, there is no solicitation, and if they are not worthy of belief, there is solicitation. One thing that satisfies me that Candy is not telling the truth is the receipt for $300 which Hobert signed. How do you suppose Candy happened to give that money to Hobert unless it was on the basis of soliciting his support to secure this litigation for Andrews? There isn't any other explanation of that. And any contention that Andrews was unaware of Candy's activities in soliciting this case for him is beyond belief. The Hobert receipt dated December 17, 1948 for the $300 was written on Andrews' own typewriter which he admittedly had with him in Rock Island on the very date of the receipt. Furthermore, the receipt and a photostat of Hobert's statement were returned to Hobert in the registered envelop mailed to him bearing the postmark July 28, 1949 and bearing the return address of Andrews' own sister.

I think the fact is completely established that there was solicitation here, that Candy actively and persistently participated in it, and, as the result of that, he and Andrews procured this contract of employment. I must therefore accept the fact that solicitation did exist here.

As I understand the law to be, such solicitation makes the contract of employment void, and, being void, Andrews' attorney's lien is unenforceable. A stipulation for dismissal having been executed by the parties to the principal case, the action of Bennett E. Cupp v. Chicago, Rock Island and Pacific Railroad Company is hereby dismissed without costs. The petition of Sol Andrews to enforce his attorney's lien is denied and his petition is dismissed without costs. This memorandum is filed in lieu of findings of fact and conclusions of law.