**Pamela Rabeler MORFELD, Appellant (Plaintiff below),**

v.

**F. M. ANDREWS, Jr., Appellee (Defendant below).**

**No. 4803.**

Supreme Court of Wyoming.

May 26, 1978.

Charles M. Aron and Richard A. Hennig, Aron & Hennig, Laramie, for appellant.

G. J. Cardine, Cardine, Vlastos & Reeves, Casper, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

McCLINTOCK, Justice.

Pamela Morfeld[1] appeals from summary judgment entered by the district court of Fremont County, Wyoming, denying her claim for damages alleged to have resulted from conversion and breach of fiduciary duty by her attorney, F. M. Andrews, Jr.[2] The principal issue in the appeal concerns the propriety of his retention of two stock certificates in Utah International, Inc., which had been delivered to him as attorney for Morfeld in the course of divorce proceedings instituted by her husband. Asserting that he had a valid attorney's lien on the certificates for unpaid legal services, Andrews refused to deliver the certificates until settlement of his claim for fees. After a divorce decree approving property settlement had been entered, the dispute as to fee had been settled[3] and the stock certificates delivered to Mrs. Morfeld, she commenced this action. On the basis of affidavits of both parties and answers of the plaintiff to interrogatories, the district court concluded that there were no genuine issues of fact and that Andrews was entitled to judgment as a matter of law. We shall affirm.

Andrews accepted employment as Mrs. Morfeld's attorney without any express agreement concerning his fees. In March of 1975, in a letter[4] reporting on progress of property settlement negotiations, he advised her that there had been no discussion of fees, that if there was a substantial lump settlement Mrs. Morfeld would be responsible for his fee out of the settlement, and that

"* * * I anticipate charging you 15% of any lump sum which we receive on your behalf. This is one of the things which we should settle between us before the case gets too far along."

Mrs. Morfeld did not respond to this suggestion concerning fees[5] although she did from time to time communicate with him by letter or by telephone with respect to matters that should be considered in reaching a settlement of property claims. On April 28 Andrews wrote that a settlement agreement had been worked out with her husband's attorney, a copy of which was enclosed, together with what was described as a short form of agreement settling his fee. This document, dated April 29 and in the form of a letter from Mrs. Morfeld to Andrews, stated that in consideration of Andrews' services in representing her in the divorce and negotiating a settlement satisfactory to her, "I agree to pay you 15% of any sums received as settlement. The said 15% does not include the value of household

---

1. Hereinafter referred to by name or as plaintiff.

2. Hereinafter referred to by name or as defendant.

3. It is admitted by Andrews that the fee has been paid although the date of payment does not appear.

4. The divorce action was filed in Fremont County and Mrs. Morfeld throughout most of the pendency of this dispute was living in Laramie in Albany County, so that much of the contact between Andrews and his client was by mail or telephone.

5. This lack of response by Mrs. Morfeld to Andrews' suggestions concerning fees continued throughout the divorce proceedings and this dispute although she stated in an affidavit that she had never refused to pay Andrews a reasonable fee, having been prevented therefrom by Andrews' own actions. The amount of the fee was ultimately settled through conference between Andrews and Mrs. Morfeld's present attorney after the matter had been considered by the Grievance Committee of the Wyoming State Bar.

goods and personal effects." This letter was admittedly signed by Mrs. Morfeld although in answer to interrogatories she states that she signed it after

" * * * he explained to me that the reason I should sign it was that he needed evidence to show that he was not working for free. When I signed that agreement at his insistence, it was still with the understanding on my part that he and I would work something out that would be reasonable."

A decree of divorce was entered in favor of Mrs. Morfeld and on May 21, 1975 a copy thereof and other papers [6] were forwarded with letter by Andrews. He also enclosed a form of promissory note in the amount of $3,015 with the request that it be signed and returned. This was not done and on June 17 Andrews again wrote, advising of receipt from Mr. Morfeld's attorney of two stock certificates, one in Mrs. Morfeld's name for 300 shares and one in her name as trustee for Karey Ann, and that "[a]ccording to our agreement, I am to receive 15% of whatever property I have obtained for you in negotiating the settlement," that the stock was quoted at $65 per share on the date the agreement was signed, and the proper fee would be $3,900 instead of the $3,015 which had not taken into consideration the 100 shares issued to Karey Ann. He further advised that "I will require that I be paid before the stock is turned over to you."

On June 24, 1975 Mrs. Morfeld filed a complaint with the Grievance Committee of the Wyoming State Bar, which after investigation of the matter and conference with the parties issued a decision under date of February 6, 1976, advising that contingent-fee contracts were not usual in the area, disapproved the same and advised the parties that the matter of attorney fees was between them.[7] Following this advice, Andrews again wrote Mrs. Morfeld, suggesting that the matter be settled by payment of $2,500 or 50 shares of the stock. Charles M. Aron, her present counsel, was retained by her at an undisclosed date and thereafter a fee of $1,100 was agreed upon. Letter of Andrews dated February 26 transmitted the stock certificates on the understanding that Aron would cause sufficient shares of the stock to be issued in Andrews' name to equal a fee in that amount. Receipt thereof was acknowledged on March 2, with the statement that Mrs. Morfeld would settle in cash as soon as the shares could be liquidated. At an undisclosed date, the $1,100 was paid to Andrews and this action was commenced on July 2, 1976.

By count one of her action, Mrs. Morfeld sought to recover for the loss in value of the stock between the time Andrews received the certificate on May 16, 1975 and their delivery to Mrs. Morfeld.[8] Count 2 alleges that Andrews had acted willfully and deliberately, and with a knowing disregard of his fiduciary duty to plaintiff, acting in pursuit of his own interests to the detriment of plaintiff, and claimed general damages in the amount of $15,000 and exemplary damages of $5,000.

Section 29–1–102, W.S.1977 provides:

"An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession, in the course of his profession-

---

6. Household goods, two horses and a 1974 Pontiac were transferred by the husband which were not included in Andrews' computation of his claimed fee.

7. The record does not contain the "Notice, Findings and Proposed Action" referred to in this letter nor does it show what disciplinary action, if any, was taken by the Committee.

8. Although the record is not clear, this date may have been the date of the divorce, but it seems unlikely that it was the date the stock certificates were received by Andrews since xerox copies of the certificates contained in the

record show a date of issuance by the company of June 4, 1975. There was some fluctuation in the trading value of the stock which was quoted at $67.75 on June 17, the date on which Andrews advised Mrs. Morfeld that he was holding the same until he had been paid, and $49.75 on the date of delivery. One hundred shares were sold by Mrs. Morfeld on June 30 at $61.25 a share and her remaining 200 shares were sold on October 7 at $63.25. The 100 shares held for her daughter were not sold nor does it appear that she ever sought to sell or intended to sell these shares.

al employment, upon money in his hands belonging to his client, and upon money due to his client, and in the hands of the adverse party, in an action or proceeding in which the attorney was employed, from the time of giving notice of the lien to that party."

In *Enos v. Keating*, 39 Wyo. 217, 271 P. 6 (1929), reh. den., we held that this statute created both a retaining and a charging lien in favor of attorneys. In this case we are concerned only with whether the facts of the case gave rise to a retaining lien. Mrs. Morfeld argues that a valid contract is necessary to support the claim of lien and since the contract in this case for a contingent fee is invalid under the great weight of authority, it follows that Andrews could not assert a lien and his retention of the stock certificates was wrongful. We have no desire to disagree with the rule adopted by the great majority of decisions, said by counsel to represent the holding of some 28 different states,[9] and as did the Supreme Court of Oregon in *Hay v. Erwin,* 244 Or. 488, 419 P.2d 32, 33 (1966) "join the vast majority of the courts and hold that contingent fee contracts in divorce proceedings are invalid." We think that counsel mistakes the effect of such a holding as applied to the facts of this dispute.

If the parties never entered into a valid contingent-fee agreement either because, as contended by Mrs. Morfeld in her affidavit in resistance to motion for summary judgment, Andrews had represented that the letter agreement would be of no force and effect, or, as is more seriously argued in this court, that it was violative of public policy and therefore void, it does not in our opinion follow that there was no valid *implied* agreement for the payment of a reasonable attorney fee which would support the claim of lien.

We have referred to Mrs. Morfeld's answer to interrogatories in which she said that she signed the letter on the basis that it was not a real agreement, "it was still with the understanding on my part that he and I would work something out that would be reasonable." To us this represents a clear-cut example of a contract for payment of the reasonable value of Andrews' services, an agreement which we would consider valid and enforceable. Even if nothing was said about fees, we think it the universal rule that the courts will find an agreement to pay the attorney the reasonable value of the services rendered.

"Lawyers are entitled to compensation for services rendered to their clients, and, in the absence of an express agreement as to the amount of the compensation, they are entitled to reasonable remuneration." 7 Am.Jur.2d, Attorneys at Law § 204, pp. 165–166.

Andrews proceeded to work under the implied arrangement until March 4, when he attempted to change the provision as to reasonable fees to a contingent fee of 15%. Whether that agreement be considered a nullity because there was no meeting of the minds or whether it is void because contrary to public policy, we believe it to be the better rule that such failure leaves the previous agreement in full force and effect. As stated in *Tillman v. Talbert,* 244 N.C. 270, 93 S.E.2d 101, 103 (1956):

"A subsequent illegal agreement by the parties cannot affect a previous fair and lawful contract between them in relation to the same subject. The change is regarded as a mere nullity, and as such cannot scathe the original contract. [Citation of supporting authorities omitted]"

Other examples of this rule are found in *Tearney v. Marmiom,* 103 W.Va. 394, 137 S.E. 543, 545–546 (1927) where the court held that a valid contract between plaintiff and an elderly and infirm man whereby plaintiff undertook to care for him, in return for which he would convey property to her at his death, was not voided by a subsequent illegal agreement to act as the decedent's common-law wife. The court held that plaintiff's right to recover under the

---

**9.** See 7 Am.Jur.2d, Attorneys at Law § 217 (1977 Supp.), and 17 C.J.S. Contracts § 235a (1977 Supp.).

first agreement was in no way dependent upon the latter, and quoted from *Britt v. Aylet,* 11 Ark. 475, 52 Am.Dec. 282 (1850), that " 'A contract void as against the policy of the law cannot affect a previous fair and lawful contract in relation to the same subject.' " Cited in *Tearney* is the further case of *McCurdy v. Dillon,* 135 Mich. 678, 98 N.W. 746 (1904), involving in part a contract for contingent fee in a divorce case. Holding that the agreement for contingent fee was void, the Michigan court then continued (98 N.W. at 748):

> "The contract for a percentage, then, being void, the next question presented is, what should be the rule of recovery? It is the law of this state that a married woman may make herself chargeable for the services of an attorney employed by her in a divorce suit. * * * If a valid contract for retainer fees was in fact made, it would not be abrogated because an attempt was made to merge it in a void contract."

Without entering into a discussion of whether allowance of fees in such a case represents a true contract, implied in fact, or whether it is a form of quasi-contract imposed by law to prevent unjust enrichment,[10] we think there was ample justification to conclude that Andrews entered into an arrangement whereunder he was to be paid the reasonable value of his services, that that contract was not wiped out by the invalid agreement for a contingent fee and that there remained a valid contract whereunder he was entitled to claim a lien upon the property of his client coming into his possession as her attorney.

Moreover, and even if the express but contingent-fee contract represents the only agreement between the parties, we have found only two cases [11] which refuse relief to an attorney who performs services for a client under a contract which the courts hold void, either because of champertous nature or a contingent fee as in this case. Most cases hold that the attorney may still recover in quantum meruit, that is, for the reasonable value of his services. A leading example of such viewpoint is *Hay v. Erwin,* supra, where the court held the contingent-fee arrangement invalid, but said this (419 P.2d at 34):

> "Despite Mr. Erwin's entering into an illegal agreement for fees, we are of the opinion that he ought to receive a reasonable fee for his services."

The court refers to *In re Faling's Estate,* 113 Or. 6, 34, 228 P. 821, 831, 231 P. 148 (1924), which had held that a contingent-fee agreement was not binding on an estate, the court regarding it as akin to champerty. It was said, however,

> " '* * * It is a general rule that, where a contract made between an attorney and client for the prosecution of an action is champertous, the attorney may recover from the client on the point of *quantum meruit* for services rendered, in the same manner as if the unlawful agreement had never existed. * * * ' "

We have found cases where the court denies recovery of fees even on quantum meruit, but except for the Minnesota and Connecticut cases cited in note 11 such denial is confined to cases where the whole purpose of the agreement is illegal. An example of this is found in *Barngrover v. Pettigrew,* 128 Iowa 533, 104 N.W. 904 (1905), where the attorneys had entered into an agreement to represent a potential defendant in a divorce case, "to furnish proof, in the trial of said cause, of the plaintiff's infidelity to first party, and to secure a divorce from his wife on his cross-petition to be filed in said suit." Payment, conditioned on success in the cross-claim,

---

**10.** See *State ex rel. Gary v. Fireman's Fund Indemnity Company,* 67 N.M. 360, 355 P.2d 291, 294 (1960) for discussion of this point and reference to Comment A of § 5 of Restatement of Law of Contracts. The retention of Andrews by Mrs. Morfeld gives as much basis for replication in fact of her agreement to pay the reasonable value of Andrews' services as does the person said in illustration 1 to have agreed to pay the reasonable value of the barrel of flour which he had ordered without fixing a price.

**11.** *Baskerville v. Baskerville,* 246 Minn. 496, 75 N.W.2d 762 (1956), and *McCarthy v. Santangelo,* 137 Conn. 410, 78 A.2d 240 (1951).

compromise " 'or any other act or thing to prevent second party from accomplishing said end' " was to be $1,000. Petition sought recovery both on the contract and on quantum meruit. The court said in part,

" * * * [T]he law will not imply a promise to pay for services which are in derogation of public policy, any more than it will enforce a specific contract having that object in view; and when a plaintiff cannot establish his cause of action without relying on an illegal contract, or on services which by their very nature contravene public policy, he cannot recover. * * * In the light of this well-settled rule, it is manifest that there can be no recovery here on a quantum meruit; for the services rendered, as shown by the record, were along the line specified in the written agreement. The appellants cite many cases wherein recovery on a quantum meruit was allowed where the contract was found to be illegal. In many of the cases champertous contracts were involved, *and in all the services actually rendered were not in themselves illegal*; while in the case at bar, as we have seen, the services rendered were in themselves illegal, because their object was to procure a divorce for the defendant." (Emphasis added)

In the case before us there is no question but that the employment was fully legal, that Andrews represented his client in an effective and satisfactory way, and that there were no services that were illegal. The invalidity of Andrews' claimed agreement for a contingent fee goes only to the manner in which the services are to be compensated. The difference is pointed up in *Hightower v. Detroit Edison Co.,* 262 Mich. 1, 247 N.W. 97, 100 (1933), a rather flagrant example of ambulance chasing, where the Supreme Court of Michigan was asked to apply the *McCurdy* rule and permit recovery in quantum meruit, and said this:

"No such recovery can be had at bar because the services were performed under a contract wholly, not partly, void, in violation of a criminal statute, * * *."

■ Mrs. Morfeld also argues that since Andrews' recovery can only be on quantum meruit, that is, for the reasonable value of the services rendered by him to Morfeld, there is no basis upon which to assert a retaining lien until the amount of the claim has been judicially established. No authority is cited for this proposition and we find his argument unpersuasive. While we have found no cases that are completely in point we think that certain decisions of the New York courts are pertinent. In the case of *In re Weitling,* 266 N.Y. 184, 194 N.E. 401, the attorneys had been retained upon a contingent-fee basis. The client became dissatisfied with their work and demanded that papers and documents in connection with the case be returned. While not objecting to their dismissal, the attorneys resisted a motion requiring them to deliver the papers

" * * * upon the ground that they should not be deprived of their retaining lien by being compelled to surrender the papers upon which, as attorneys, they had a valid retaining lien, until they were paid the fair and reasonable value of the services which they had rendered."

The court said (194 N.E. at 401–402):

"The lien which they possessed was a valuable right given by law to secure them for the payment of the reasonable value of the services which they had rendered as attorneys in the action. * * *

"The fact that their retainer provided for the payment of a contingent fee did not affect the validity of their lien. Upon their discharge, they were entitled to be paid the fair and reasonable value of the services which they had rendered upon the basis of a quantum meruit. *Application of Krooks,* 257 N.Y. 329, 178 N.E. 548.

"A client is at liberty to change his attorney and cancel the contract of retainer whenever he, for any reason, is dissatisfied and desires to do so. He can only do so, however, upon payment for services rendered. In the absence of such payment, the retaining lien remains in force, and the attorney cannot be compelled to

surrender the papers in relation to the action in his possession, in the absence of unprofessional conduct on his part."

Also in point is *Application of Kamerman,* 278 F.2d 411, 413–414 (2 Cir. 1960), involving an employment contract specifically found to be champertous, and the court said this:

"While the authorities are divided, the more widely supported view is that an attorney may recover upon the basis of *quantum meruit* for professional services rendered by him under a champertous retainer agreement.

"The next proposition—that the attorney has a lien for an amount computed on a *quantum meruit* basis, notwithstanding the champertous retainer agreement— was squarely adopted in *McCoy v. Gas Engine & Power Co.,* 2d Dept. 1912, 152 App.Div. 642, 137 N.Y.S. 591, affirmed unanimously without opinion 1913, 208 N.Y. 631, 102 N.E. 1106. * * * The retainer was set aside but the attorney was awarded $30,000 'as the reasonable value of the services performed by him'. and 'the sum so fixed' was 'to be a lien upon the award' (152 App.Div. at pages 644, 646, 137 N.Y.S. at page 593.)"

The order denying allowance of attorney fees was therefore reversed and "the cause remanded to the district court for a determination of the amount, if any, of petitioner's lien on the basis of *quantum meruit.*"

While the case just cited involved a charging lien and not a retaining lien as in the case at bar, the principle involved is only whether an attorney should be permitted to have a lien and we consider the decision authoritative in this respect. *Weitling,* the New York case, clearly involved the right to retain papers which had been received by the attorneys in the course of their professional employment. In our case it was not necessary for the court to fix a fee and specifically approve the assertion of lien because the matter of fee was settled without there being a determination of the retaining rights. The rule as announced by the Court of Appeals of New York is therefore applicable and notwithstanding that

Andrews could not claim under the contingent-fee contract he still had a right to recover upon quantum meruit and such claim was sufficient to support his claim of lien. We are of the opinion that the district court was correct in sustaining the existence of such a lien and in denying Mrs. Morfeld's action for conversion.

Mrs. Morfeld argues that the lien statute is not applicable to this situation, citing cases from Illinois and South Dakota in support of her position. The Illinois situation is somewhat confusing. While we find the Courts of Appeals for that state saying that "[t]he Attorney's Lien Act has no application to divorce suits," *Stoller v. Onuszko,* 10 Ill.App.3d 598, 295 N.E.2d 118, 119 (1973), it seems fairly clear that the statement is based on language of a statute which is quite different from ours. As said in *Thoresen v. Thoresen,* 293 Ill.App. 168, 12 N.E.2d 28, 30 (1937), reh. den.:

"In our opinion the provision of the statute 'that attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted,' properly construed, can refer only to claims or causes of action for damages whether liquidated or unliquidated. A divorce proceeding or any claims connected with or growing out of it certainly do not come within the category of claims or demands for damages as specified in the act."

In *Rosmanitz v. Rosmanitz,* 110 Ill.App.2d 349, 249 N.E.2d 153, 155 (1969) one count of the principal action had been for separate maintenance and the other count related to interests of the parties in real estate. A decree of divorce was entered, settling all property rights. The attorneys who had first represented the plaintiff wife but had withdrawn, attempted to file a petition in intervention asserting attorney's lien on a cash settlement which they claimed had been awarded plaintiff as lump sum alimony was in lieu of plaintiff's interest in the real estate. As said by the court,

"Section 14 of Chapter 13 of the Illinois Revised Statutes provides that the attorney's lien attaches to 'any money or property which may be recovered, on account of such suits, claims, demands or causes of action * * *.' Respondents seek to show that the moneys recovered by plaintiff were 'on account' of their endeavors. They are entitled to an opportunity to present their claim and submit their evidence."

It was therefore ordered that filing of the intervening petition be accepted. When it was contended in *Stoller,* supra, that two causes of action (one for separate maintenance and one involving property) were stated in one count so that his lien attached to the real estate which was the subject matter of one of the causes of action, the court rejected the claim of lien

"because he seeks through its use to enforce a void and unenforceable contract of employment. We will not enforce an attorney's lien predicated on an invalid or unlawful contract of employment. (*Cupp v. Chicago, R. I. & P. R. Co.* (N.D.Ill. 1949), 87 F.Supp. 565.) In *Rosmanitz* the attorney used the lien to recover the value of his services. *Rosmanitz* is distinguishable." 295 N.E.2d at 120.

Under the circumstances we do not think that we should use the Illinois cases in the construction of our statute.

The South Dakota statute, involved in *Miller v. Miller,* 83 S.D. 227, 157 N.W.2d 537, 541 (1968), reh. den., is quite similar to our statute but in that case the attorney sought to assert a lien for additional fees claimed by him over and above the amount which had been allowed by the court in granting a divorce and property settlement. The court said:

"On oral argument he indicated that he had no binding agreement with her for additional attorneys fees. If that was the case, then his filing of the notice of lien was not authorized under SDC 1960 Supp. 32.1205(4). A valid contract for fees, either express or implied, between the attorney and his client is necessary for the existence of a lien. 7 Am.Jur.2d Attorneys at Law, § 281."

The court ruled out the possibility of asserting a lien on the basis of a contractual-fee contract since such a contract was invalid, but it did not consider whether there was an agreement for reasonable fees or, whether, assuming the invalidity of the contingent-fee agreement, the matter should be considered on the basis of quantum meruit. Factors which we have considered important to our case were therefore not passed upon. In the case before us the evidence is clear that there was an implied agreement for payment of a reasonable fee.

■ One point remains for brief consideration, which is the argument that Mrs. Morfeld was entitled to relief under her second claim for breach of fiduciary duty. The broad allegation of the complaint is unsupported by any concrete facts in the record except that Andrews, in asserting his lien, did act in his own interest and not his client's. However, as is said in 7 Am. Jur.2d, Attorneys at Law § 281, p. 202:

"Generally, the only advantage the attorney gains from his retaining lien is the possibility of forcing his client to settle because of the embarrassment, inconvenience or worry caused by the attorney's asserting the lien."

" * * * Such a lien is designed to create a strong incentive to persuade a client to pay attorney's fees legally owed and it 'cannot be disregarded merely because the pressure it is supposed to exert becomes effective.' *In re San Juan Gold, Inc.,* 96 F.2d 60 (2d Cir. 1938); * * *." *First National Bank of Cincinnati v. Pepper,* 454 F.2d 626, 633 (2 Cir. 1972). " * * * As explained in *The Flush,* supra [277 F. 25 (2 Cir. 1921)] the right to retain the papers is valuable to the attorney in proportion as denial of access to them causes inconvenience to the client." *In re San Juan Gold, Inc.,* 96 F.2d 60 (2 Cir. 1938).

■ We do not know how there can be a breach of fiduciary duty in the assertion of a legal right. In taking this position we do not intend to commend Andrews for attempting to impose a contingent-fee con-

tract upon his client. But as said in *First National Bank of Cincinnati v. Pepper,* supra, 454 F.2d 626, 633:

> "* * * If Pepper's lien was valid in any respect (which the stockholders vigorously deny) his insistence upon it could not have subjected the stockholders to duress, for generally it cannot be duress for a party to insist upon his legal rights. [Citing cases]"

We fail to find wherein an actionable wrong has been committed by Andrews. Insofar as ethical considerations are concerned, those were the subject of a proceeding before the Grievance Committee and we take it that both parties have accepted the results there reached. In *In re Smith,* 42 Wash.2d 188, 254 P.2d 464 (1953), that court had before it the question of discipline to be meted out to an attorney who had entered into a contingent-fee arrangement with his client. The court condemned the practice as being violative of public policy but found the case to be one of first impression in the state and thought that its decision "by furnishing a guide for future conduct will serve the only purpose which needs to be accomplished in this case." 254 P.2d at 469. Recommendation for reprimand of the attorney was therefore denied. We similarly announce our disapprobation of such contracts by this opinion and advise the Bar of this State that any future contracts for contingent fees in divorce cases will be considered unethical conduct sufficient to merit imposition of discipline.

The judgment of the district court is affirmed.