## IN RE CARLETON.

### (No. 2,257.)

(Submitted January 29, 1906.  Decided February 10, 1906.)

*Attorneys—Disbarment—Acting as Counsel for Both Parties— Deceiving Court—"Fair Trial" Law—Bias and Prejudice of District Court—False Affidavit of Disqualification—Counsel Fees—Alimony.*

Attorneys—Unprofessional Conduct—Acting as Counsel for Both Parties —Deceit.
1. C., an attorney, acted in his official capacity for a woman in bringing about her marriage to her seducer. Five days later an agreement was entered into between both in the attorney's office to have the marriage annulled for monetary considerations. Soon thereafter the suit for the annulment of the marriage was commenced by the same attorney, appearing for the husband. Prior thereto the attorney had obtained a paper from the wife, executed in blank, purporting to be a designation of an attorney to represent her in the annulment proceedings. The name of an attorney was inserted in the blank by C. Neither the agreement to have the marriage annulled nor the circumstances under which the marriage was brought about, were called to the attention of the court by C. *Held*, that C.'s conduct was unprofessional and contrary to the principles of fair dealing, in that he acted as attorney for both parties in the same cause, and deceived the court in not acquainting it with all the facts connected with the case.

Attorneys—Disqualification of Judge—False Affidavit.
2. An attorney, employed by a woman in a divorce proceeding, who, in order to delay the trial of the cause, mailed to his client an affidavit or disqualification charging bias and prejudice on the part of the district judge (Laws 1903, Second Extra. Session, p. 9), to be signed by her if she saw fit to do so, where it did not appear that either the attorney or the client thought that the judge was so prejudiced, was guilty of unprofessional conduct.

Attorneys—Divorce—Alimony—Counsel Fees—Unprofessional Conduct.
3. The conduct of an attorney who entered into a contract with his client, in a divorce proceeding, whereby he was to receive, in addition to the attorney's fee that might be allowed him by the court, a portion of all moneys received by the client as alimony, and who failed to call such agreement to the court's attention, prior to the making of the order allowing counsel fees, is reprehensible, and in violation of his duty as a member of the bar.

APPLICATION by the Helena Bar Association for the disbarment of Evans A. Carleton. Judgment of suspension.

*Mr. William T. Pigott*, for the Accused.

Before judgment of disbarment or suspension can properly be made, the evidence to sustain the charges should be of such a character as that it satisfies the court to a reasonable certainty that the charges are true. It must appear to a reasonable certainty that the person sought to be removed or suspended has been guilty of acts involving such moral turpitude as proves his unfitness to remain a member of the legal profession. Such is the reasonable and just doctrine of this court. It is also the rule in this jurisdiction that an attorney cannot be disbarred or suspended for any cause not enumerated in the statute, and so the rule is in many other states. (*In re Collins,* 147 Cal. 8, 81 Pac. 220.) Mere irregularities, or violations of ethics not amounting to acts denounced by the statute, are not causes for disbarment or suspension. It must appear to the satisfaction of the court that the accused has committed one or more of the acts prohibited by the statute and that he is no longer fit to practice law. The first condition may of itself establish the second; on the contrary, not always does proof of the first show that an attorney is not entitled to the confidence of the court, his fellow-practitioners, and his clients. (See *State* v. *Baum,* 14 Mont. 14, 35 Pac. 108; *State* v. *Wines and Booth,*

21 Mont. 464, 54 Pac. 562; *In re Thresher,* 29 Mont. 16, 73 Pac. 1109; *In re Collins,* 147 Cal. 8, 81 Pac. 220; *Matter of Haymond,* 121 Cal. 388, 53 Pac. 899; *State* v. *Finley,* 30 Fla. 325, 11 South. 674, 18 L. R. A. 401; *Ex parte Eastham* (Or.), 80 Pac. 1057; *In re Cobb,* 84 Cal. 550, 24 Pac. 293; 3 Am. & Eng. Ency. of Law, 2d ed., 303, and notes; *Hinckley* v. *Krug* (Cal.), 34 Pac. 118; *People* v. *Goddard,* 11 Colo. 259, 18 Pac. 338; *Bradley* v. *Fisher,* 13 Wall. 335, 20 L. Ed. 646; *Ex parte Aaron Burr,* 9 Wheat. 529, 6 L. Ed. 152; *Bradley* v. *Tochman,* 1 Hayw. & H. 263, Fed. Cas. No. 1788.)

*Mr. Frank W. Mettler,* for Complainant.

MR. JUSTICE MILBURN delivered the opinion of the court.

On the 27th day of November, 1905, certain members of the Helena Bar Association represented to this court in writing that Evans A. Carleton, an attorney and counselor at law licensed to practice his profession, had been guilty of certain acts involving moral turpitude, and asking that he be required to show cause why he should not be removed or suspended as an attorney and counselor at law and member of the bar of this state.

The accusations of which we are called upon to take notice and referred to in the communication of the gentlemen aforesaid are supported by the several oaths of Lola Ellen Heardt and Martha Smith. Mr. Carleton, after certain preliminary motions were disposed of, was ordered on the fifth day of December, 1905, to appear and show cause why he should not be disbarred or suspended as suggested. Mr. F. W. Mettler appeared as attorney for the accusers, and Mr. William T. Pigott as attorney for Mr. Carleton.

The accusations, stated as briefly as may be, are set forth in the brief of counsel for the accusers as follows:

"1. Acting as attorney for both parties in the same matter at the same time in the case of *Smith* v. *Smith.*

"2. Deceiving the court and also his client, Mrs. Smith, in securing and using the designation of attorney in the same case.

"3. Deceiving the court in the matter of the collusive agreement between the Smiths.

"4. Attempting to procure from his client, Mrs. Heardt, for an improper and unwarranted purpose, a false affidavit of disqualification against Judge Clements in the case of Heardt v. Heardt.

"5. Deceiving the court in the matter of the contract for attorney's fees with his client, Mrs. Heardt, in the same case."

We shall consider the first, second and third points together. It appears that the plaintiff, Mrs. Smith, before an alleged marriage between her and the defendant, James Smith, was named Martha Lee, being a young woman about eighteen years of age; that while enceinte she called upon Mr. Carleton, as a lawyer, for advice, stating that Smith was responsible for her condition. She desired that some arrangement be made by which the child, when born, would be born without the stigma of bastardy. The outcome of her consultation was that Mr. Carleton requested the defendant, James Smith, to call upon him at his office. He did so, and in the presence of the young woman and her mother he was prevailed upon to agree to a marriage ceremony, which was immediately gone through with, the understanding being, with full knowledge of counsel, that the parties were not to live together as man and wife, or in any wise enter into any marriage relation such as is contemplated in law in the case of a marriage. Five days thereafter, in Mr. Carleton's office and acting under his advice, the young man and woman entered into a written agreement, signed by each, wherein it was stated that they were both desirous of having said marriage declared null and void, the man agreeing to pay $100 to the woman, and also to pay for her use, at the law office of Mr. Carleton, the sum of $25 on or before the first day of each and every month thereafter, beginning on the first day of October, 1905, until the full sum of $750 should be paid, including the $100 before mentioned. The man agreed, upon the due performance of the

terms and agreements, not to visit or annoy the woman, and the woman agreed, in consideration of the premises set out in the contract, that she would save the man "free and blameless and without any liability whatsoever for or on account of said marriage now subsisting between said parties."

The suit to annul the marriage was soon thereafter brought, Mr. Carleton appearing for the plaintiff, Mr. Smith. Mr. Carleton presented to Mrs. Smith a document purporting to be a designation of an attorney to represent her in the annulment proceedings, leaving the place for the name of the attorney blank, which paper she signed and executed. Thereafter the name of Theodore Shed, now deceased, and then a member of our bar, was inserted by Mr. Carleton. It does not appear that Mr. Carleton, when the matter came on for hearing, informed the district court of any of the facts as to this agreement between the Smiths with relation to the marriage ceremony, but it does appear that he did not inform the court as to the agreement in writing to have the pretended marriage annulled.

Mr. Carleton in his answer admits that in August, 1905, he acted as attorney and counsel "during a short period of time" for said Martha; says that "after he had ceased to act as such attorney and counsel, and after such relations between said Martha and himself had ended, he acted as attorney for said James Smith in a suit brought for the purpose of obtaining a dissolution or annulment of the marriage, * * * and avers that when he acted as attorney for said James he was not the attorney or counsel of or for said Martha, * * * " but "that said Martha was represented by an attorney and counselor of the bar of this court, to-wit, one Theodore Shed, * * * " that the said marriage was brought about for the sole reason that said Martha was at the time of the celebration thereof heavy with child by the said James, and that the said Martha desired the ceremony performed for the sole purpose "of giving to her unborn child by said James a name and to make it legitimate," and so expressed to the accused her wish and desire at the time she engaged his services as adviser, said James and

said Martha stating at the time to the accused that "neither would live with the other and that both desired to be separated and live apart, the one from the other." He admits the making of the paper designated as an appointment of counsel, and states that "the said Martha Smith, of her own free will and accord, did sign and execute a 'certain paper purporting to be the appointment of an attorney in the proposed case of *Smith* v. *Smith*,' and avers that said paper writing so signed by her was a designation and appointment of an attorney to appear for her in said case, and that the attorney so appointed did appear in said case and acted therein as the attorney for said Martha Smith." He avers that the same proceedings were had and the same results secured that would have been secured if the accused, instead of another attorney, had represented said Martha in said suit. He admits drafting the agreement hereinbefore referred to, and that the said Smiths signed and executed the same.

As to the fourth and fifth specifications, in the case of *Heardt* v. *Heardt*, it appears that she had brought a suit for a divorce from her husband, making charges of cruelty and other things, and that she was unable to prove the charges in her complaint, and had frequently stated to her counsel that "the hand of every man was against her," and that Mr. Carleton prepared an affidavit of bias and prejudice under what is called the Fair Trial Law, and sent it to her by mail, stating that if she felt warranted in signing the same, it would, upon filing, operate to procure a continuance on account of the time required to procure another district judge to try the suit, and thus, at the end of twelve months, which meanwhile would run, she would be able to substantiate the charges of a supplemental complaint to the effect that her husband was guilty of desertion. This affidavit she failed to sign, but sent the same to the Hon. J. M. Clements, district judge.

It appears, also, that Mr. Carleton, on August 31, 1904, had entered into a contract in writing with Mrs. Heardt whereby he was to receive one-half of all moneys "received of Frank B.

Heardt in the litigation between the said Lola Ellen Heardt and her husband, Frank B. Heardt, whether the same are received as alimony or otherwise.'' On January 10, 1905, this agreement was modified to the effect that he was to receive one-fourth instead of one-half. On August 6th an order was issued out of the district court, directing Frank B. Heardt to appear and show cause why the plaintiff should not receive $60 a month alimony, $50 suit money, and $150 attorney's fees. Hearing was continued until August 16th. On hearing, the motion for alimony was denied. On rehearing, on September 28, the court made an order that the defendant Heardt pay $50 attorney's fees, and $50 a month temporary alimony. It appears conclusively that counsel did not inform the court of this agreement whereby he was to receive in addition to the attorney's fee allowed by the court, a further compensation, to-wit, the amount agreed upon between him and the plaintiff as per agreement heretofore mentioned. All of these charges as to the Heardt matter are admitted by the accused.

Practically, all the points set out in the accusation as to his conduct in his relation to the Smiths and in reference to the Heardts are admitted by Carleton in his answer. A judgment might have been rendered by this court upon the answer, without taking testimony; but, it having been deemed wiser to examine the witnesses offered by the accusers, as well as to give Mr. Carleton an opportunity to make further statements in his behalf regarding his conduct, the hearing was ordered. Practically, there was not anything of importance disclosed in the evidence adduced which is not admitted in the answer.

As to the Smith matter, Mr. Carleton is of the opinion that he was not acting for both parties in the same matter at the same time. He denies that he deceived the court or his client, Mrs. Smith, in securing and using the designation of attorney in the same case; or that he deceived the court as to the matter of the agreement between the Smiths, whereby they undertook to have the alleged marriage set aside. He also denies, in the Heardt matter, that he attempted to procure any false affidavit of dis-

qualification against Judge Clements, or that he deceived the court in the matter of the contract for attorney's fees.

We do not think there is any escape, under the admissions of the accused, from holding that he did act as attorney for both parties in the *Smith Case*. When Mrs. Smith first appeared in his office and asked for advice, it appears that he outlined to her the very course of action which was pursued. He at every step therein was actively engaged in attempting to bring about the result desired, to-wit, a marriage, pretended to be for the purpose of wedlock under the laws of the state, and which, as there is some evidence to show, the man Smith was induced to consent to by threats then and there made that he would be punished for some crime not explained to him, Mr. Carleton, at the same time, intending to bring an action for annulment of the alleged marriage. All of which conduct was, at least, against good morals.

So far as any designation of attorney—an instrument to be used for the purpose of procuring the services of some unselected attorney—is concerned, that appears to be merely a part of the same plan which he had instituted; but it does not appear that in this he deceived Mrs. Smith or Mr. Smith. It may easily be supposed that each, being under his influence, signed any paper that he prepared without any question and with full acquiescence in his acts and suggestions. We believe it to be unprofessional and contrary to the principles of professional fair dealing expected at the hands of all counsel by the court, to bring an action of the kind which was brought for the annulment of such a marriage entered into under such circumstances, and especially without letting the chancellor know the full facts in the case as to how the alleged marriage was brought about, and all the circumstances pertaining thereto. Counsel should tell the court the truth, and all the truth under the official oath of the profession.

As to the Heardt matter, Mr. Carleton must have known that the so-called Fair Trial Law was not intended—whatever intentions the legislature may have had in enacting it—to aid unfor-

tunate married women to delay their divorce suits until some
then nonexistent cause of action may accrue, knowing, as Mr.
Carleton must have known, that a client, especially an ignorant
one, such as this woman appeared on the witness-stand to be,
is apt to sign and verify any paper prepared by intelligent coun-
sel; and he was derelict in sending such an affidavit to the woman
to be sworn to by her. It was his good fortune, as well as hers,
that she did not make oath to it; for it does not appear for a
moment that Judge Clements was disqualified by reason of bias
and prejudice, or that either the accused or Mrs. Heardt thought
so.

As to the contract for attorney's fees to be awarded by the
court and additional compensation to be obtained by dividing
with the woman the alimony to be paid by the husband, it seems
that the accused relies upon what he considers somewhat of a
custom among attorneys. Such custom was not proven, and if
it had been, it should not operate for his benefit. There seems
to be a notion among some lawyers that the property of the hus-
band in a divorce case belongs to the judge of the court, and
that he may give so much thereof as he may see fit to the wife,
and that the husband may not complain. The fact is that the
money to be paid out belongs to the husband, and is only taken
from him by the court by force because of the necessities of the
wife, and not because of any need of the attorney. A man may
have his property taken only by due process of law, and when,
say $500, is allowed to a wife because she believes that she is in
need and so swears, and because it is the husband's duty to take
care of her *pendente lite,* certainly it amounts to almost a crime,
if not quite so, to procure that sum from the husband, he and
the court being deceived by the testimony of the wife and argu-
ment of counsel into the belief that she needs it for her own sup-
port, when in fact she intends to give one-half or one-fourth to
the counsel to supplement the fee which the court said was right
and proper to be paid by the husband to him. No self-respect-
ing court, if it knew the facts, would make an order for $500
for the needs of the wife if in fact she needed only half that

amount, the other half to go to the attorney in the case, in addition to a just fee fixed by the court.

There is not any occasion to hunt through the books for authorities to support this court in its conclusion that the conduct of Mr. Carleton in connection with the Smith and Heardt matters, so far as we have heretofore found, was reprehensible and in violation of his duty as a member of the bar of this court, in that he was guilty of deceit and malpractice involving moral turpitude (subsection 5, section 402, Code of Civil Procedure, amended by Session Laws, 1903, page 51). He has been guilty of such unprofessional conduct that we cannot overlook it. He is to be commended, however, for not having testified falsely in his own behalf on the witness-stand, and further for the reason that he has admitted in his answer the truth of the charges which we have found to be substantiated.

Without further comment, which would be unnecessary, the judgment of the court is, in the light of the findings and our conclusion above, that Mr. Evans A. Carleton, now a member of the bar of this court, be suspended as attorney and counselor for a period of three months from this date. At the expiration of this time said Carleton may resume the practice of law as heretofore.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.