STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR
ASSOCIATION, RELATOR, V. LEONARD DUNKER,
RESPONDENT.
71 N. W. 2d 502

Filed July 8, 1955.   No. 33778.

*Clarence S. Beck,* Attorney General, and *Robert A. Nelson,* for relator.

*Leonard Dunker,* pro se.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAP-

PELL, WENKE, and BOSLAUGH, JJ., and FLORY, District Judge.

CHAPPELL, J.

This is a disciplinary proceeding initiated by relator in conformity with rules of this court against respondent, a lawyer duly admitted and licensed to practice his profession in this state.

The formal complaint contained two counts. The first count substantially alleged: That on April 14, 1954, respondent entered into a contingent fee contract with his client, the wife, who was plaintiff in a divorce action then pending in the district court; that such contract was entered into after all the evidence had been adduced and while the matter was under consideration by the trial court prior to announcement of its decision; and that at the time respondent was employed he agreed to accept such fee for his services as the court would allow, but after trial he told his client that the amount the court would allow would be inadequate for the services performed, and the contingent fee contract was then executed. The contract, attached to and made a part of the complaint, provided that respondent should represent his client in any necessary litigation then pending and to be concluded, including any appeal therefrom by defendant. The consideration to be paid for such services was 15 percent of the value of all property recovered by his client, excluding child support. Such 15 percent was to include all court costs, land appraisal charges, and similar expenses incurred by respondent in handling the litigation, but in any event his fee was to be not less than $1,000.

The second count substantially alleged: That on or about April 7, 1954, respondent wrote and mailed a letter to another lawyer. The letter, attached to and made a part of the complaint, recited in substance that certain named clients of the other lawyer had borrowed money from the United States government and given it a note

secured by a mortgage on some livestock; that they subsequently sold the livestock and kept the money paid therefor; that when the government learned of such sale, it demanded from the purchaser the proceeds thereof; that the purchasers' insurer, represented by respondent, paid the demand to the government; and: "My client and I are insisting that either the money be paid or that criminal proceedings be instituted against both parties under either the state laws or the United States laws. I have conferred with a government representative and he has been and is willing to be most cooperative. He and I both want to make an example of this matter by either full collection or prosecution so that this case will be a deterrent against similar occurrences in that area or elsewhere. * * *

"I feel that if nothing is done within the next two weeks that I will have no alternative but to demand prosecution under either the state or federal laws. Therefore, I will expect some action herein within that time or I will proceed without further notice." Relator prayed for such disciplinary action as is justified by the facts.

After respondent had entered his voluntary appearance herein, he filed an answer. Therein he admitted the facts set forth in the complaint. In justification he alleged substantially as follows: That a decree of separate maintenance was granted to his client on November 28, 1950, which decree was in full force and effect on April 14, 1954, when the contract, attached to and made a part of the complaint, was executed; that a divorce action was filed by respondent for his client on June 4, 1953, during the approximate month when he began to represent her; that on October 17, 1953, his client, as plaintiff therein, was allowed $125 temporary attorney's fee, and $75 suit money; that the divorce action was tried for 10 days during a period beginning December 1, 1953, and ending January 5, 1954; that legal and factual briefs requested by the court were submitted by

counsel for both plaintiff and defendant before the contract of April 14, 1954, was executed; and that a decree of divorce in favor of respondent's client was filed by the trial court on June 8, 1954, after the contract of April 14, 1954, was executed. The decree required defendant to pay court costs, appraisal fees, and the services and expenses of respondent; that such items were paid by defendant; and that after entry of the decree, no demand for payment under the contract of April 14, 1954, was ever made by respondent and no money was ever paid to him by his client as the result of its execution.

Respondent substantially alleged that the letter referred to in the second count of the complaint was addressed and sent by him to a lawyer about a claim against such lawyer's client at a time when the United States government already had all the information about the alleged violation referred to in the letter; and that no demand for prosecution was ever made by respondent or his client and no money was ever paid to them as a result of the letter, but that one of the persons who sold the mortgaged property was prosecuted by the United States government. Respondent prayed for dismissal of the complaint.

Relator, for reply to respondent's answer, admitted each and every allegation contained therein, and subsequently both relator and respondent joined in a motion for judgment on the pleadings pursuant to Rule 6 of the Rules for Disciplinary Proceedings promulgated by this court. Thus, all pertinent, well-pleaded facts contained in the pleading are admitted.

At the outset it should be said that the contract here involved is not one to collect alimony already awarded by a judgment of the court and unpaid, or to procure a settlement of property rights without divorce. As observed in authorities subsequently cited, such contracts are generally held not to be contrary to public policy.

In State ex rel. Nebraska State Bar Assn. v. Wiebusch, 153 Neb. 583, 45 N. W. 2d 583, we held: "The ethical

standards relating to the practice of law in this state are the canons of professional ethics of the American Bar Association and those which may from time to time be approved by the Supreme Court.

"Canons of ethics and rules governing professional conduct of lawyers are recognized and applied by this court in proper cases."

It is elementary that lawyers who are granted licenses to practice their profession in this state thereby voluntarily assume certain obligations and duties as officers of the courts, and in the performance thereof they must conform to certain standards in relation to clients, to the courts, to the profession, and to the public. State ex rel. Hunter v. Crocker, 132 Neb. 214, 271 N. W. 444.

The Canons of Professional Ethics contain no specific canon with relation to contracts for contingent fees in divorce cases. Canon 13 thereof does provide: "A contract for a contingent fee where sanctioned by law, should be reasonable under all circumstances of the case, including the risk and uncertainty of the compensation, but should always be subject to the supervision of a court, as to its reasonableness." However, there is nothing in the pleadings in the case at bar indicating that respondent ever failed or refused to submit the contract involved to the trial court for its inspection or supervision, and such canon has no controlling force in this case.

In that connection, it is generally held that a contract executed before decree is rendered providing for payment of attorney's fees in a divorce action contingent upon the amount of alimony to be subsequently obtained upon the award of a divorce is void as against public policy, since, because of the lawyer's personal interest in the litigation, it tends to prevent a reconciliation between the parties and destroy the family relationship. Annotation, 30 A. L. R. 188, cites and discusses authorities supporting such statement. They are too numerous to cite here. Jordan v. Westerman, 62 Mich. 170, 28 N. W. 826, 4 Am. S. R. 836, is the

leading case cited and relied upon in numerous opinions. See, also, McCurdy v. Dillon, 135 Mich. 678, 98 N. W. 746; 17 C. J. S., Contracts, § 235, p. 618; 5 Am. Jur., Attorneys at Law, § 166, p. 361. Respondent has cited but one case which seemingly holds otherwise. It is Manning v. Edwards, 205 Ky. 158, 265 S. W. 492. However, subsequently, Overstreet v. Barr, 255 Ky. 82, 72 S. W. 2d 1014, citing numerous authorities, distinguished Manning v. Edwards, *supra,* and held: "Contract with wife for attorney's fees contingent upon procurement of divorce and alimony and settlement of property rights, attorney to receive percentage of amount recovered, is void as against public policy." The contract involved in that case was in all respects comparable with that at bar.

In Thurston v. Travelers Ins. Co., 128 Neb. 141, 258 N. W. 66, this court held: "The contract of employment as actually made between attorney and client is controlling, and the attorney is bound thereby even though he may have agreed to act for an inadequate amount, or for no fee at all, unless the agreement is made under a mistake of fact which the law recognizes.

" 'Under ordinary circumstances, an attorney who has contracted with his client as to the amount of his compensation for a specified service will not be allowed to contract for greater compensation for such service while the service is being rendered.' Olson v. Farnsworth, 97 Neb. 407."

In the case at bar it appears that when respondent was employed he agreed to accept such fee as the court would allow as full compensation for his services. He was bound thereby, because it appears that such agreement was not made under any mistake of fact which the law could recognize.

Also, it is generally held that a lawyer who, in the pursuit of his profession, executes an agreement such as that at bar, which is void as against public policy, is guilty of a breach of professional obligation and duty

which may justify disciplinary action. 5 Am. Jur., Attorneys at Law, § 272, p. 424. See, also, In re Carleton, 33 Mont. 431, 84 P. 788, 114 Am. S. R. 826, which holds that failure to disclose or submit such a contract to the court before decree is rendered, is a more serious offense.

In such cases the discipline to be imposed depends upon the facts of each particular case. Herein, respondent's client already had obtained a decree of separate maintenance which was in full force and effect long before respondent filed her divorce action. No pleading herein alleges that there was any chance of a reconciliation or that respondent in any manner attempted to obstruct or prevent it. The case had been tried on its merits and submitted to the district court before the contract of April 14, 1954, was executed. The decree of divorce subsequently rendered became final. It would appear reasonable to conclude that under the circumstances reconciliation was impossible. Further, there is no evidence indicating that the contract was not made in good faith believing it to be valid. In that connection, after the divorce was granted and alimony allowed, no attempt was ever made by respondent to enforce the contract of April 14, 1954. He accepted and was paid as his fee only that amount allowed by the court in conformity with his original contract. There is no evidence or allegation that respondent was guilty of any fraud or dishonesty.

Under the circumstances, we conclude that respondent did violate his obligations and duty as a lawyer and officer of the court in not adhering to his original agreement and in executing the agreement of April 14, 1954, but that the imposition of censure therefor is ample disciplinary action.

With regard to the second count, it is generally the rule that a lawyer who threatens criminal prosecution to enforce a civil claim for himself or his client thereby breaches his obligation and duty as a lawyer and of-

ficer of the court, which may justify disciplinary action. 7 C. J. S., Attorney and Client, § 23, p. 760, and authorities cited. In the case at bar the letter was sent to a lawyer who doubtless knew all of the facts about the circumstances with relation to his client. Concededly, the government officials knew all the facts and prosecuted the lawyer's client without any demand therefor by respondent. The letter was not sent to the client but to his lawyer, and for aught we know from this record, the letter was never even seen by the client or used in any manner or in any way to overcome his will. Further, no money was ever paid in connection with the concededly existing claim. Respondent, under the record in this case, could not upon any theory be found guilty of blackmail or extortion.

Under the circumstances, we conclude that respondent did violate his obligations and duty as a lawyer and officer of the court in signing and mailing the letter here involved, but the imposition of censure therefor is ample disciplinary action.

The order of the court is that respondent should be and hereby is censured. Costs are taxed to respondent.

JUDGMENT OF CENSURE.