STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR
ASSOCIATION, RELATOR, V. LEONARD DUNKER,
RESPONDENT.
279 N. W. 2d 609

Filed June 5, 1979. No. 41434.

James W. Hewitt, for appellant.

Paul L. Douglas, Attorney General, and C. C. Sheldon, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, and BRODKEY, JJ., and STUART, District Judge, and KUNS, Retired District Judge.

BRODKEY, J.

This is an original disciplinary proceeding brought in the name of the State of Nebraska on relation of the Nebraska State Bar Association against Leonard Dunker, a lawyer duly admitted and licensed to practice his profession in this state. Following hearings held before the Committee on Inquiry of the Third Judicial District and the Advisory Committee, formal charges against the respondent were filed in the Supreme Court of Nebraska on May 6, 1977. This court then appointed a referee to hear the matter, who then held a hearing on the charges. The testimony adduced at that hearing, by stipulation of the parties, consisted principally of the testimony adduced at the hearing held before the Committee

on Inquiry of the Third Judicial District. The referee filed his report in this court on October 11, 1978. The respondent filed his exceptions to the report of the referee on October 13, 1978, and thereafter perfected his appeal to this court.

The formal charge, as filed in this matter, consists of 14 separate paragraphs containing specific allegations of misconduct on the part of the respondent, plus an unnumbered concluding paragaph alleging violations of certain sections of the Code of Professional Responsibility. In his report, the referee summarized the factual allegations of the formal charge against the respondent into 12 separate items, alphabetically designated as A through L, as follows:

"A. Filed an Affidavit of Mailing Notice that is claimed to have been back-dated.

"B. Threatened more expense and delay if they got their own lawyer.

"C. Filed a waiver of notice and recommendation in the District Court of Saunders County, Nebraska, signed by Reynold M. Kubik, when the Respondent was guardian of Reynold M. Kubik and knew Reynold M. Kubik to be incompetent.

"D. Filed in the County Court of Saunders County a recommendation that Respondent not be removed as Administrator signed by Reynold M. Kubik, when Respondent knew Kubik to be incompetent and knew that Respondent was Reynold M. Kubik's guardian.

"E. Respondent filed with the County Court of Saunders County an approval of settlement agreement signed by Reynold M. Kubik without informing the Court that Reynold M. Kubik was incompetent and that Respondent was his guardian.

"F. Respondent filed with the County Court of Saunders County a stipulation and consent of heirs signed by Reynold M. Kubik without informing the Court that Reynold was incompetent and that Re-

spondent was his guardian.

"G. Respondent filed with the County Court of Saunders County a waiver of notice of hearing on petition for final settlement, approval of final report, determination of fees and commissions, payments of mortgages and notes, distribution of estate, and discharge, signed by Reynold M. Kubik without informing the Court that Reynold M. Kubik was incompetent and that Respondent was his guardian.

"H. That the estate of which Respondent was administrator and acting as attorney was required to file a Federal Estate Tax Return on September 24, 1970. That Respondent made no arrangements to file the Federal Estate Tax Return or pay the Federal Estate Tax until after the due date. That Respondent finally arranged for another attorney to prepare and file the Federal Estate Tax Return, which was done on June 9, 1972. That the late filing and payment resulted in penalties and interest in the amount of $3,826.64 assessed against the estate.

"I. That on April 30, 1973, Judith R. Kubik, as an heir of the estate, assigned a portion of her proceeds of the estate to Gateway Bank and that respondent ignored the assignment and made payment direct to Judith R. Kubik.

"J. That Respondent failed to promptly pay premiums on his surety bond, payment not being made until March 1, 1974.

"K. That the Judge of Saunders County Court, claiming failure on the part of Respondent to render an account of his administration within the time ordered by the Court, ordered the Respondent to show cause why he should not be removed as Administrator.

"L. That the Administrator in making distribution from the estate deducted from the share of certain of the beneficiaries an amount of $400 each, which was to be withheld to apply on another attorney's fees in the land sale proceeding." In his report, the referee has also added an additional item

M in summary of the foregoing items A to L, reading as follows: "That all of the allegations, if true, would establish a pattern of neglect, misrepresentation, conflict of interest, and conduct that adversely reflects on Respondent's fitness to practice law in violation of Section 7-104 R. R. S. and Canon I Dr. 1-102A 4 and 6, Canon V Dr. 5-105A and B, Canon VI Dr. 6-101A 3." In his report, the referee found that the charges designated as A, B, and I, were not established by clear and convincing evidence; but that the charges referred to as C, D, E, F, G, H, J, K, and L were all established by clear and convincing evidence. The referee also found that the evidence established a pattern of neglect reflecting on respondent's fitness and competence to practice law; and recommended that respondent be suspended from the practice of law for 3 years.

In his brief, respondent alleges only two assignments of error: (1) The referee erred in failing to consider evidence favorable to respondent on charges H and K set forth in the referee's report; and (2) the discipline recommended by the referee is excessive. It is the latter issue that we are principally concerned with in this case, as it appears that there is no real dispute as to the underlying facts of what transpired, nor of the fact that respondent was guilty of infractions of the Code of Professional Responsibility of the Nebraska State Bar Association. In his argument on appeal, counsel for respondent concedes this is true, but alleges that the referee failed to take into consideration certain mitigating circumstances and evidence on certain of the charges, and that the recommended period of suspension for a term of 3 years is excessive and unjustified.

By way of a general factual background to aid in understanding this case, it appears from the record that William Kubik, Sr., who was a farmer living near Prague, Nebraska, died intestate on June 24, 1969, leaving as his heirs his widow Judith; his sons

Wilfred, Reynold, and William, Jr.; and his daughters Rita, Ramona, Marie, and Judith Ann. Shortly before the death of the decedent, respondent had filed divorce proceedings against him on behalf of Mrs. Kubik. Shortly thereafter, respondent was asked by the surviving widow, Judith, to serve as the administrator of decedent's estate, and he accepted.

During the course of the estate proceedings, William, Jr., and Wilfred, two of the sons of the decedent, filed lawsuits in the District Court for Saunders County, alleging an oral agreement with their father to convey certain lands to them. Another attorney represented the sons in the action. Respondent filed a motion to make more definite and certain in each lawsuit and then recommended to the heirs that they engage William L. Walker, a Lincoln attorney, as their attorney. A settlement agreement was finally reached and the real estate in question was sold on August 5, 1972.

One of the principal categories of charges, found by the referee to be substantiated by the evidence, involved respondent's dealings with another son of the deceased, Reynold Kubik. There is little question in the evidence but that Reynold was lacking in intellect and mentally slow, the degree thereof, however, being a matter of dispute. On February 9, 1971, Reynold was committed to the Lincoln Regional Center by the mental health board of Lancaster County. On November 11, 1971, he was placed on convalescent leave by the Regional Center, and was discharged from the Regional Center on August 17, 1972. On October 24, 1972, he was readmitted to the Regional Center a second time, following a second determination of incompetency by the mental health board. Prior to this time, however, on March 16, 1971, respondent was appointed the guardian of Reynold Kubik by the county court of Lancaster County, and he continued in that capacity until he was dis-

charged on October 2, 1973. While acting as administrator of the estate of William Kubik, Sr., and during the time the estate proceeding was pending in Saunders County, respondent presented various filings and papers, on one occasion to the District Court and on four instances to the county court of Saunders County, which filings and papers did not reveal that Reynold was under guardianship as an incompetent. In his report the referee found five of the violations, supported by the evidence, involved Reynold Kubik. Specifically, on March 31, 1972, respondent filed with the county court of Saunders County a recommendation that he not be removed as administrator. The recommendation was signed by Reynold M. Kubik. On April 25, 1972, respondent filed with the Saunders County court an approval of settlement agreement, which was also signed by Reynold Kubik. On March 14, 1973, respondent filed a stipulation and consent of heirs signed by Reynold Kubik. On June 27, 1973, respondent filed with the Saunders County court a waiver of notice on the petition for final settlement, which was also signed by Reynold Kubik. At no time did respondent notify the county court of Saunders County that Reynold Kubik had been declared incompetent or that he, respondent, was Reynold Kubik's guardian. Counsel for respondent concedes that respondent did not advise the court of Reynold Kubik's guardianship, but points out that everyone knew Reynold's condition and that the other heirs also signed the various pleadings and documents along with Reynold. Counsel for respondent argues that respondent's sins were sins of omission and not commission, and that no one suffered financial loss as a result thereof. In his report, however, the referee found that the respondent lacked an accurate understanding of a guardian's duties to his ward, an attorney's duty to his client, and an administrator's duty to the court and to the beneficiaries of the estate.

Item H of the referee's report refers to respondent's failure to file a federal estate tax return, which was due on September 24, 1970. Respondent's explanation for this failure was that he knew such a return would have to be made but because of his inexperience in dealing with estates of that size he did not know the date such a return would be required, and the matter slipped his mind until attorney William L. Walker, who was consulting with him about the estate, inquired about the return. The record reveals that the estate tax return was prepared by attorney Walker, although it is not completely clear whether in so doing he was actually employed by the heirs, or was assisting respondent. In any event, attorney Walker prepared the estate tax return in June 1972, and on October 12, 1972, respondent paid the Internal Revenue Service $11,914.73, of which $3,098.72 was penalty and interest. Respondent contends that the referee failed to take into consideration certain ameliorating circumstances, to wit, that he advised the heirs by letter that he would reduce his fee for his services (estimated to be in the neighborhood of $10,000) to the figure of $7,000, in order to reimburse the heirs for the penalties and interest assessed against the estate as the result of the late filing of the federal estate tax return. In a subsequent meeting in April 1974, respondent testified he told the heirs he would reduce his fees; and the heirs present at the meeting, with their respective counsel, Walker and Inbody, agreed to the plan. The record also reveals respondent did not file the Nebraska or federal fiduciary returns in the estate when they were due, and, as a result, penalties and interest in the amount of $1,095.33 were assessed against the estate. Respondent paid the penalties and interest out of his own funds. He also points out that neither the heirs nor the estate suffered any loss as the result of the late filing.

Item K of the referee's summary of charges con-

cerns the allegations contained in paragraph XIII of the charges themselves with reference to the respondent's citation by County Judge Edstrom for failure to render an account of his administration within the time ordered by the court, and also the order to show cause issued on January 21, 1972, why respondent should not be removed from office as the administrator of the estate for the reasons stated therein. Respondent points out that the hearing was never held on the order to show cause nor was he ever removed as administrator; and he further contends he did not receive a copy of the citation entered by Judge Edstrom, and that the first time he was aware of the citation was when he received the order to show cause some 3 weeks later, at which time he immediately went to Wahoo and discussed the matter with Judge Edstrom.

We now turn to a consideration of the proper sanction to be imposed in this case. As previously stated, the referee recommended that respondent be suspended from the practice of law for a period of 3 years. The Attorney General's office, as counsel for the State of Nebraska ex rel. Nebraska State Bar Association, relator, in its brief, finds merit in respondent's assignment of error with regard to the excessiveness of the discipline recommended by the referee; and, notwithstanding its conclusion that the matters in this case were handled in an irregular fashion and with inexcusable disregard for potential conflicts of interest, states: "that suspension for a period of no more than six months would be appropriate." The Attorney General's brief also states, however: "It is neither our province nor desire to advocate rejection of the referee's recommendation as being clearly wrong."

In this case, respondent is 59 years of age and has been practicing law in this state for approximately 35 years. Respondent points out that were we to follow the recommendations of the referee and suspend

him for 3 years, he would be 62 or 63 years of age by the time his suspension expired, with scarce hope of retaining his present clients, and would be faced with the necessity of attempting to reestablish his law practice at an advanced age. The records of this court, however, reveal that respondent has had prior disciplinary problems with the Nebraska State Bar Association. In 1955, respondent was subjected to a judgment of censure by this court because of his professional misconduct. State ex rel. Nebraska State Bar Assn. v. Dunker, 160 Neb. 779, 71 N. W. 2d 502 (1955). In determining the sanction to be applied for violations of the Code of Professional Responsibility we may properly consider respondent's history and record in this regard. State ex rel. Nebraska State Bar Assn. v. Hollstein, 202 Neb. 40, 274 N. W. 2d 508 (1979); Bluestein v. The State Bar of California, 13 Cal. 3d 162, 118 Cal. Rptr. 175, 529 P. 2d 599 (1975). It is a well-established rule in this state that lawyers who are granted licenses to practice their profession in this state thereby voluntarily assume certain obligations and duties as officers of the courts, and in the performance thereof they must conform to certain standards in relation to clients, to the courts, to the profession, and to the public. State ex rel. Nebraska State Bar Assn. v. Dunker, *supra.* In view of the totality of the circumstances existing in this case, we conclude that the recommendation of the referee for suspension of respondent for a period of 3 years is, perhaps, too severe; on the other hand, we also feel that suspension for a period of only 6 months, as recommended by the Attorney General, is, under the facts of this case, inadequate. We think the ends of justice will be properly served by suspending respondent from the further practice of law in this state for a period of 1 year, to commence 30 days after our judgment herein becomes effective. If, at the end of 1 year from the effective day of his suspension, respondent makes an affirma-

tive showing, sufficient to satisfy this court, that he has fully complied with the order of suspension and that he will not, in the future, engage in any practices offensive to the legal profession, then he will be reinstated and allowed to engage in the practice of law; however, if he fails to do so, then the suspension herein provided for is to become permanent. Judgment of suspension accordingly. All costs of this proceeding are taxed to respondent.

JUDGMENT OF SUSPENSION.